UNITED STATES

v.

**Airman First Class Karl L. ALLEN, Jr., FR 511–74–2135 United States Air Force**

**ACM 23203.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 9 May 1981.

Decided 19 March 1982.

Appellate Counsel for the Accused: Colonel George R. Stevens and Captain Douglas H. Kohrt.

Appellate Counsel for the United States: Colonel James P. Porter, Lt. Colonel Bruce R. Houston, and Captain Michael J. Hoover.

Before HODGSON, POWELL and MILLER, Appellate Military Judges.

## DECISION

MILLER, Judge:

The accused was convicted by a general court-martial, consisting of members, of three offenses involving the taking of indecent liberties with females under sixteen years of age, in violation of the Uniform Code of Military Justice, Article 134, 10 U.S.C. 934 (1970). The accused's sentence consists of a dishonorable discharge, confinement at hard labor for ten years, total forfeitures, and reduction to airman basic.

During the spring of 1980, the accused was assigned to drive an Air Force vehicle which transported several three to five year old children, with special learning problems, between their on-base home and an on-base preschool.

Sometime between 1 April and 8 May of 1980, while performing this duty, the accused unzipped his trousers and placed his hand inside them to manipulate his penis. When he became aroused, he withdrew his penis from his trousers and masturbated. While engaged in this activity, he placed the hand of a five year old girl, K., who had observed his exposed penis, upon it. K.'s hand remained on his penis, riding with the motion provided by the movements of the accused's hand, until ejaculation occurred. The accused then told K. not to tell anyone about the incident.

Between 1 April 1980 and 26 May 1980, again while transporting children, the accused exposed his penis to the view of R., H., and C., three and four year old girls, and touched various parts of R.'s body with it. These touchings were partially observed by H.

The accused was charged with taking indecent liberties with K., R., H. and C. and committing sodomy with R. He was acquitted of the offenses of indecent liberties with C. and sodomy with R.

On appeal, these facts gave rise to four of the eight errors assigned by appellate defense counsel:

I. THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT BY ALLOWING [R.] TO TESTIFY SINCE HER TESTIMONY DID NOT ESTABLISH A RECOGNITION OF HER DUTY TO TELL THE TRUTH AT TRIAL.

II. THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT BY ADMITTING THE HEARSAY TESTIMONY OF [MRS. P.] AND [MRS. D.].

III. THE MILITARY JUDGE ERRED BY PERMITTING THE TESTIMONY OF [H.] SINCE THE GOVERNMENT'S INABILITY TO PROVIDE THE DEFENSE WITH THE TAPE OF A PREVIOUSLY RECORDED INTERVIEW WITH THIS WITNESS CONSTITUTED A VIOLATION OF THE JENCKS ACT, 18 U.S.C. 3500.

IV. THE MILITARY JUDGE ERRED BY DENYING THE DEFENSE COUNSEL'S REQUEST FOR INSTRUCTIONS ON THE LESSER INCLUDED OFFENSE OF INDECENT EXPOSURE TO THE SPECIFICATION OF THE CHARGE.

After discussing these four assignments, and concluding that they, like the others, are not meritorious, we affirm.

I

The defense claims that the military judge erred by permitting the children to testify because their recognition of a duty to tell the truth was not established. We disagree.

The government subjected each child witness to preliminary questions designed to satisfy the Military Rule of Evidence 603 requirement that a witness' conscience be awakened and his or her mind be impressed with the duty to tell the truth, prior to any declaration by a witness that he or she will testify truthfully. In each instance, the defense was given an opportunity to cross-examine the child with respect to these preliminary questions before any matters concerning the merits of the case were stated. After unsuccessfully challenging their competence because of infancy, the defense chose not to object to the testimony of any of these witnesses, either during the preliminary questioning or their substantive testimony.

When the Government rested, the defense renewed its motions and objections concerning the testimony of child witnesses by motions to strike the testimony, again, on competency grounds. These contentions were denied by the military judge for the second time.

Looking, more precisely, at the defense's specific contention that R. should not have been permitted to testify because "her testimony did not establish a recognition of her duty to tell the truth", we focus first on those preliminary questions that were asked her prior to her declaration that she would tell the truth. R. was four years old at the time of trial.

During direct preliminary examination these questions, which were asked and answered in the presence of the court panel, included repeated references to Jesus and the Devil. R. was asked where each lived, if they were good or bad, if Jesus loved her and if Jesus would want her to tell the truth today. When asked what happens when she doesn't tell the truth, R. responded that her mother puts hot sauce on her tongue, an occurrence which she emphatically indicated she didn't like. When initially asked if telling the truth and lying were good or bad, R.'s answer indicated a proper understanding of the terms. Following some confusing questions as to whether or not Jesus would continue to love her if she was bad or lied, to which R. hesitatingly answered "yes", the questions regarding the definitions of telling the truth and lying were repeated. The child, who, at this time had been testifying for an extended period of time, answered by saying telling the truth was bad and lying was good. R. concluded both cross and re-direct preliminary examination by declaring that she would tell the truth in court.

If appellate defense counsel's contention that a witness should not be allowed to

testify on the merits unless the testimony of that witness first establishes a recognition of his or her duty to tell the truth is correct, it is questionable whether R. satisfied this requirement. Our reading of Military Rules of Evidence 104(a), 601, and 603 convinces us, however, that this defense contention is erroneous.

Mil.R.Evid. 104(a) clearly places the responsibility for determining whether any person is qualified to be a witness exclusively with the military judge. Although, the defense is entitled to have a court panel instructed as to its responsibility for determining the weight and credibility that can justifiably be assigned to the testimony provided by any given witness, the question of whether any witness is qualified to testify in the first instance, is a question for the military judge alone. Quoting from Mil.R. Evid. 104(a):

Preliminary questions concerning the qualification of a person to be a witness . . . shall be determined by the military judge. In making these determinations the military judge is not bound by the rules of evidence except those with respect to privileges.

The Rule's second sentence means only that the military judge may *consider* evidence that would otherwise be inadmissible when making these determinations. It in no way effects the military judge's obligation to comply with Mil.R.Evid. 601 when making such determinations.

■ Mil.R.Evid. 601 reads, "Every person is competent to be a witness except as otherwise provided in these rules." This language clearly creates more than a mere presumption of competence. In fact, it actually re-defines the term "competent witness" so as to include any person who, when called to provide non-privileged[1] testimony: (1) declares, pursuant to an oath or affirmation as prescribed in Mil.R.Evid. 603 that he or she will testify truthfully, and (2) is not sitting as military judge[2] or court panel

member[3] on the very court panel before which he or she is about to testify.

Mil.R.Evid. 603 provides:

Before testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness's conscience and impress the witness's mind with the duty to do so.

According to Professor Saltzburg:

Like its federal counterpart, Rule 603 requires that a witness swear or affirm that he will tell the truth before he is permitted to testify. The Rule establishes no specific colloquy to be used in carrying out this requirement. Any process that is sufficient to "awaken the witness's conscience . . ." is satisfactory. The object here is to impress upon prospective witnesses that they have a duty to tell the truth while testifying.

\* \* \* \* \* \*

The new rule is written to permit atheists, conscientious objectors, *children*, and individuals with emotional difficulties to satisfy the basic criteria. [Emphasis added.]

S. Saltzburg, L. Schinasi, D. Schlueter, Military Rules of Evidence Manual at 276 (1981) [hereinafter cited as S. Saltzburg].

Here, the sole basis for disqualification of such child witnesses under the definition of "competent witness" just provided, would be a failure to comply with Mil.R.Evid. 603.

■ In the instant case, the preliminary questions put to R. were clearly calculated to awaken her conscience and impress upon her, in language appropriate to her age, the fact that she had to provide truthful answers to questions asked of her. Regardless of whether these questions actually accomplished their intended purpose, after they were asked, and prior to the time R. gave any testimony regarding the merits of

---

**1.** Military Rules of Evidence, Section V, provides that witnesses will not testify if a legitimate privilege referenced in that section is claimed against the testimony to be provided by such a witness.

**2.** *See,* Mil.R.Evid. 605.

**3.** *See,* Mil.R.Evid. 606.

the case, the child positively declared that she would testify truthfully.

Based upon this analysis, we find that the military judge properly determined that R. was qualified to be a witness. His ruling denying the defense's challenge, as supported by the criteria for competency set forth in Mil.R.Evid. 601, was correct.

Other preliminary questions, apparently designed to demonstrate R.'s knowledge, understanding, and intelligence,[4] were also asked. They added to the effectiveness of the Rule 603 questions. These questions related principally to the weight and credibility the court could give to R.'s testimony. We conclude that the accused was not prejudiced by the military judge's ruling.[5]

## II

■ The defense assigns error alleging improper admission of hearsay testimony at trial. This testimony recounted the circumstances surrounding and content of the initial complaints regarding the offenses as stated by two of the child victims to their respective mothers.

On 8 May 1980, K.'s mother, Mrs. P., overheard K. telling her young brother that "Ace [a monicker for the accused] unzipped his pants and pulled his weiner out." After hearing this comment, Mrs. P. immediately approached K. and asked if there was anything the little girl needed to tell her. When K. responded "No", Mrs. P. decided against pressing her at that time. Although she felt there "was something there," Mrs. P., nevertheless, felt certain that K. would relate it to her "when she was ready to talk about it."

Nothing was said about either incident until the evening of 3 June 1980 when K. awoke from a nightmare screaming in her bedroom. Mrs. P. entered the bedroom and found K. "sitting up in her bed . . . kind of in a little ball . . . crying and shaking." The child's first words were, "You're not going to let Ace do that anymore, Mommy, are you?" After Mrs. P. dealt with the child's promise to Ace, "not to tell", K. related to her mother the essential facts of the offense by which she was victimized, including the fact that his "weiner spit pee." Mrs. P. reported the information to the Air Force Office of Special Investigations (OSI) the following morning.

An officer contacted the parents of other children whom the accused transported to and from school. He provided these parents with information concerning the allegations made by K. and suggested that they query their respective children concerning their knowledge of the alleged, or similar incidents, occurring during any trips to and from school.

Sometime in August 1980, following the officer's suggestion, Mrs. D., the mother of R., questioned her daughter about the accused. She specifically asked her daughter if her bus driver had any "toys" on the bus. (She asked this question because she had been told that K. indicated that the accused had referred to his penis as a "toy".)

According to Mrs. D., R. initially looked over to her toy box and said "No." Mrs. D. then asked, "Well, are there any toys on the bus at all—in the front seat or anywhere?" This time the daughter responded, "Yes." When asked, "Where", R. responded, "In his panties, Mom." When asked, "Where in his

---

4. The questions asked to demonstrate the children's knowledge, understanding and intelligence were probably designed to establish proof that the children were competent to testify as witnesses. Such proof was formerly required by the "old" rules of evidence, which failed to recognize even a presumption of competency with regard to children under 14 years of age. Manual for Courts-Martial, United States, 1969 (Revised Edition), para. 148*b.*

5. Although not specifically assigned as error, a portion of the defense's argument regarding child competency, seemed aimed, instead, at alleging that the military judge erred by failing to exercise his discretion under Military Rules of Evidence 403 and 611 and exclude R.'s testimony. We find it unnecessary to address the threshold question of whether testimony provided by a victim of an alleged offense can ever be excluded under either of these two rules, because, under the facts of this case, it is clear that the military judge's failure to exclude R.'s testimony was not an abuse of the broad discretionary power granted to him.

panties", R. pulled her own pants down and pointed to her "private area".

The little girl then became very quiet. In response to additional questions from her mother, she proceeded to relate the facts of the incident by which she was victimized. In describing the accused's penis, R. told her mother "It got big, big, big Mom." She also indicated that she had held his "toy" in her hand, and that he had placed it on her arm and stomach as well as in her mouth.

On 25 September 1980, a civilian social worker interviewed R. at the request of OSI. During this interview the social worker found it necessary to prompt R. to get her to relate information concerning the offense. With the assistance of Mrs. D., the social worker did, however, obtain information pertinent to the offense from the child.

Prior to trial, K. and R. had each recounted their recollections of the offenses numerous times to a variety of people, including their parents, medical personnel, social workers, investigators and attorneys representing both the government and the defense.

Initially, trial defense counsel moved to suppress Mrs. P.'s testimony which he indicated would reiterate K.'s account of the alleged offense as related some 57 days following the alleged offense. The Government had provided notice of its intent to offer the testimony as a hearsay exception under Military Rules of Evidence 803(2) and 803(24).[6]

Inexplicably, trial defense counsel's argument on this motion limited his objection to the evidence's admissibility under the hearsay exception provided by Mil.R.Evid. 803(2). As a result, both parties' arguments regarding the defense motion to suppress pertained to that single issue. Without comment, the military judge denied the motion.

In its opening statement, the defense disclosed that some of the difficulty in getting to "the bottom of what has happened" was

the youth of the children. The court-panel was told that the necessity of understandably concerned parents and interested investigators asking children simple but suggestive questions caused these children to "learn" what the accused had done and, then, to "know the truth by rote."

During the cross-examination of K., she was twice asked when she found out that the "stuff" she had testified to on direct examination was bad. On both occasions, K. responded, "Right away." The defense counsel also referenced previous statements she had made, both to him and the Article 32 investigating officer, but did not succeed in getting her to admit any inconsistencies between earlier statements and her testimony.

Defense's substantive cross-examination of R. was more fruitful. After expending considerable effort getting her to focus her attention on an interview with the civilian social worker, R. finally acknowledged that when she had talked to this social worker about the offense, she had told her different "stuff" from that which she had stated on direct examination.

When the Government began questioning Mrs. P. concerning the circumstances surrounding K.'s out-of-court statement, the defense objected and renewed its pretrial contention that such testimony would constitute inadmissible hearsay evidence. The judge, again, without comment, denied the objection. During cross-examination, defense elicited a statement from Mrs. P. that, prior to trial, her daughter had been required to talk to various persons about 20 to 25 times concerning the offense.

The next witness called by the Government was Mrs. D. When asked to relate the outcome of a conversation she had with R., her daughter, concerning the incident involving R., the defense made a hearsay objection. Again, without hearing argument by either side, the military judge also overruled this objection.

---

**6.** In addition to notifying the accused that the Government might argue that Mrs. P.'s reiteration of her daughter's complaint might be admissible under Military Rules of Evidence 803(2) and 803(24), the government also indicated that the testimony was admissible under Military Rules of Evidence 803(1), 803(3), and 804(b)(5).

The defense presentation of evidence included testimony of the accused, in conformity with that promised in the opening statement, and the testimony of the civilian social worker. This latter witness testified about the interview she conducted with R. on 25 September 1980.

Clearly, defense's contention that Mil.R. Evid. 803(2) requires a reasonable proximity in time between a startling event occasioning an excited utterance and the utterance, itself, was correct. Unquestionably, a period of 57 days would not, in this case, have constituted a reasonable proximity of time. Therefore, Mrs. P.'s testimony and that of Mrs. D., if hearsay, did not qualify for admission under the hearsay exception provided by this rule. *Compare*, Military Rules of Evidence 803(1) and 803(2) with the old "spontaneous exclamation" exception, Manual for Courts-Martial, United States, 1969 (Revised Edition), paragraph 142*b*. [hereinafter cited as MCM 1969 (Rev.)] *See*, Drafters Analysis of Military Rule of Evidence 803 and S. Saltzburg, *supra*, at 356–357.

A military judge, however, is not required to grant a motion to suppress evidence simply because the moving party demonstrates that one of several theories under which such evidence could be admitted is meritless.

When the defense counsel later objected to the Government's questioning of Mrs. P. and Mrs. D. on the witness stand, it was clear that reiteration of their respective daughters' previous out-of-court statements did not constitute hearsay evidence. Rather, it constituted legitimate rebuttal, as prior consistent statements, refuting the defense's express and implied charges that the children's in-court testimony had been recently fabricated, Mil.R.Evid. 801(d)(1)(B).[7]

The military judge did not have sufficient information to conclude that Mrs. P.'s testimony was not admissible under the other exceptions to the hearsay rule cited by the Government in its notification to the accused. Additionally, depending upon the children's abilities to communicate and to recall events, which were then nearly a year old and the nature of the defense's attack upon their credibility, the mothers' testimony might not have constituted inadmissible hearsay when it was presented. This is so, particularly in view of the children's tender ages.[8]

Since Mil.R.Evid. 601 now provides essentially that child witnesses are competent, it follows that testimony of such witnesses, regardless of their recall abilities, is relevant and admissible in trials of persons charged with sexually abusing them. The best test of the weight and trustworthiness of evidence is the truth-compelling process of cross-examination. Here, after both children had testified at trial, both Mrs. P. and Mrs. D. were asked to state the out-of-court declarations of their respective daughters. The children and their respective mothers were subject to cross-examination and were examined concerning their testimony and earlier declarations.

We conclude that, under the circumstances of this case, the rulings of the military judge admitting the evidence did not constitute prejudicial error. Here, as elsewhere throughout this record, we are convinced that accused received a fair trial.

### III

We turn our attention, now, to the defense assignment of error that alleges H.

---

7. According to Mil.R.Evid. 801(d)(1)(B):
   The following definitions apply under this section:
       \*    \*    \*    \*    \*    \*
   A statement is not hearsay if:
       \*    \*    \*    \*    \*    \*
   The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . .

8. Even had the defense not commented that these young children had been subjected to extensive pretrial suggestion, their ability to recall specific details of events approximately one year in the past, would, in all likelihood, have been in issue.

should not have been permitted to testify because the government had failed, pursuant to a proper Jencks Act request, to provide it with a tape recording made by the civilian social worker during her 25 September 1980 interview with H. *See,* Jencks Act, 18 U.S.C. 3500 (1976).

The same civilian social worker who had interviewed R. on 25 September 1980 for the OSI, also interviewed H. on 24 September 1980. While this social worker had tape recorded H.'s interview at OSI's request, the tape was subsequently reused by OSI because "it was inaudible and of no evidentiary value." Although called as a defense witness, the civilian social worker did not testify regarding any recollections H. related to her during the 24 September 1980 interview. She did testify, however, that during this interview H. told her that she had learned of the alleged abuse from her mother.

According to an undisputed offer of proof presented at trial, Mrs. Harding had no notes pertaining to the interview, because, as had been her past practice, she planned at the time she conducted that interview to make notes from the tape she recorded, following the interview. She had been unable to do so on this occasion because of the tape's inaudibility.

As she had previously agreed, Mrs. Harding provided OSI with the tape recording. Upon receiving it, the OSI agents, likewise, were unable to hear anything on it "due to a rubbing of the tape during the recording process". Having determined the tape to be of no evidentiary value, OSI returned it to inventory stock for reuse. In any event, it was not retained as evidence.

In partial support of the defense's contention, we note that the Second Circuit of the United States Courts of Appeal has, since a warning it issued in *United States v. Bufalino,* 576 F.2d 446 (1978, 2d. Cir.), consistently held "inaudible voice recordings" to be proper subjects of Jencks requests. These decisions have been based upon the premise that it is for a court, rather than a prosecutorial investigative agency to determine whether any particular voice recording is audible.

Regardless of the Second Circuit's position, however, no such warning has been issued by courts within the military justice system. Recognizing the lack of prosecutorial control over independent criminal investigative agencies in the military, *see, United States v. Groothoff,* 11 M.J. 887 (A.F.C.M.R.1981), we find no compelling reason in this case to join the Second Circuit by broadening the minimum prophylactic rule already required by the Jencks Act. Retention of such tapes would clearly assist in resolving potential challenges and in making judicial determinations of inaudibility. Here, however, the tape was so inaudible as to prevent the independent person who conducted the interview from utilizing it even for memory refreshment purposes.

The Government's criminal investigative agency exercised undisputed good faith in determining that the tape recording was inaudible, and the military judge correctly denied the defense motion to suppress H.'s testimony based upon a purported violation of the Jencks Act.

## IV

■ The fourth and final assertion of error we discuss alleges that the military judge erred by denying the trial defense counsel's request for instructions on indecent exposure as a lesser included offense of indecent liberties.

MCM 1969 (Rev.), para. 213f(3), provides:

[Indecent acts with a child under the age of 16 years] consists of taking any immoral, improper or indecent liberties with, or the commission of any lewd or lascivious act upon or with the body of any child of either sex under the age of 16 years *with the specific intent of arousing,* appealing to, or gratifying the lust or passions or *sexual desires,* either *of the person committing the act,* or of the child, or of both. When the accused is charged with taking indecent liberties, *the liberties must be taken in the physical presence of the child,* but it is not essential that the evidence show physical contact between the

accused and the child. *Thus, one who with the requisite intent exposes his private parts to a child under the age of sixteen years may be found guilty of this offense.* Nonconsent by the child to the act or conduct is not essential to this offense, nor is consent a defense. [Emphasis added.]

Indecent Exposure, on the other hand, requires a willful and wrongful exposure in an indecent manner to public view. *See,* MCM 1969 (Rev.), Appendix 6 c 157. The former is a serious offense which requires a specific intent to gratify sexual desires in the presence of a child under 16, the latter is a petty offense requiring only a general criminal intent.

This record contains no evidence which reasonably places in issue the accused's guilt of the lesser offense of indecent exposure. We conclude from the defense's objection to an instruction on the lesser offense of indecent acts with another that they, too, found there was no issue as to the accused's specific intent to gratify his sexual desires. The evidence supports this conclusion.

■ An offense that would otherwise be characterized as the offense of indecent exposure, when committed in the presence of a child under the age of 16 and committed with the intent to gratify the sexual desires of the accused, the child or both, is a serious offense unrelated to the minor offense of indecent exposure. *United States v. Brown,* 3 U.S.C.M.A. 454, 13 C.M.R. 10 (1953); *United States v. Fales,* 38 C.M.R. 828 (A.F.B.R.1967). The evil inherent in the accused's disregard of the potentially long lasting effects upon the innocent victims of such lewd and lascivious behavior forecloses the possibility of findings that would indicate the relatively minor nature of such behavior if foisted upon mature adults. Consequently, the military judge had no duty to instruct the court members on the elements of the offense of indecent exposure. *United States v. Patterson,* 14 U.S.C.M.A. 441, 34 C.M.R. 221 (1964).

Having examined the entire record of trial, each error assigned by appellate defense counsel, and the Government's response to each error so assigned, we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the accused was committed.

Accordingly, the findings of guilty and the sentence are

AFFIRMED.

HODGSON, Chief Judge, and POWELL, Senior Judge, concur.