**UNITED STATES, Appellee,**

v.

**Specialist Four Miguel A. URBINA, Jr., SSN 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, United States Army, Appellant.**

**CM 442188.**

U. S. Army Court of Military Review.

26 Nov. 1982.

4. The Army Noncommissioned Officer Guide, FM 22-600-20, March 1980, at 2.

Eric A. Seitz, Esquire, argued the cause for the appellant. With him on the brief were Colonel William G. Eckhardt, JAGC, Captain Warren G. Foote, JAGC, and Captain Claudio F. Gnocchi, JAGC.

Captain Arthur L. Passar, JAGC, argued the cause for the appellee. With him on the brief were Colonel R.R. Boller, JAGC, and Lieutenant Colonel John T. Edwards, JAGC.

Before MILLER, KUCERA and BADAMI, Appellate Military Judges.

## OPINION OF THE COURT

BADAMI, Judge:

The main issue in this case is whether statements made by the five-year-old molestation victim to her mother and an agent, a member of the Army Criminal Investigation Division (CID), were admissible in evidence as excited utterances under Rule 803(2) of the Military Rules of Evidence.

Appellant was found guilty by the members of a court-martial of sodomy, lewd and lascivious acts, and indecent exposure in violation of Articles 125 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 925 and 934 (1976). He was sentenced to a dishonorable discharge and confinement at hard labor for eight years. The convening authority disapproved the sodomy conviction, approving the remaining convictions and a sentence of confinement at hard labor for four years with a reduction to the grade of Private E–1.

Appellant contends the military judge erred in: (1) permitting the victim to testify, and (2) admitting the victim's statements concerning the crime into evidence. He also contends the evidence was insufficient for conviction, his defense counsel was incompetent, and that the staff judge advocate and convening authority abused their discretion in proceeding with a general court-martial when the investigating officer recommended dismissal of the charges. We affirm.

At about 1500 hours on 22 September 1981, the appellant asked his stairwell neighbor, Mrs. G., if her five year old daughter could come to his quarters and play with his daughter. Appellant's wife was not home at the time. The victim went to appellant's apartment and stayed until some time after 1600 hours when her mother brought her home.

When the victim came home, she told her mother that appellant was going to get her ice cream and candy. A short time later the victim told her mother that appellant "made magic." When asked by her mother how he had "made magic," she told her he "made magic with his pee-pee," and "made milk" come out of it. She also told her mother that appellant wanted her to "suck it," but she didn't want to and just held it. The victim was described by her mother at this time as "a little upset." Mrs. G. told her husband and he asked the little girl whether she told her mother the truth. When she answered "Yes," he called the CID.

Special Agent Bowman of the CID arrived about half an hour later. The victim was upset and reluctant to talk to Bowman. Finally she told him that appellant "made magic with his pee-pee and make milk come out of it" and that he cleaned it up with a tee-shirt. She said this occurred in the bedroom.

Agent Bowman and a military police investigator Michael Goodwin apprehended appellant at his night school class and interviewed him. He denied the allegations. Bowman was preparing an affidavit for a search warrant when Goodwin asked appellant if he had masturbated that day. Appellant said that he had. When asked what he had cleaned up the ejaculation with, he said he had used a tee-shirt which he had thrown in a clothes basket. Prior to this no one had mentioned that they were looking for a tee-shirt.

Bowman and Goodwin took appellant back to his apartment to get the tee-shirt. Appellant's wife was there and he spoke in Spanish to her. She exclaimed in English, "Ain't I good enough for you?" She then went into the bedroom and then the bathroom ostensibly to urinate. She remained a few minutes and then dashed out of the apartment holding her stomach. The apartment was searched but the tee-shirt was not found.

Appellant testified at trial. He denied that anything had happened. He said he lied to the police when he said he masturbated and cleaned it up with a tee-shirt because he was tired of their questions and was afraid they might find a semen-stained towel or tee-shirt, which he had used for intercourse with his wife, and he wanted to save her the embarrassment of questions about their sex life.

Mrs. Urbina also testified denying that she ever made the statement attributed to her by the police and denying that she had removed any evidence from the apartment.

### Excited Utterances

■ Mil.R.Evid. 803(2) provides an exception to the rule prohibiting the admission of hearsay and allows admission of an "excited utterance" which is:

A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

As we said in *United States v. Hill,* 13 M.J. 882, 885 (ACMR 1982) (citations omitted):

In order to find that 803(2) applies, it must appear that the declarant's condition at the time was such that the statement was spontaneous, excited or impulsive rather than the product of reflection or deliberation. The factors to be considered include lapse of time between the startling event and the utterance, as well as, the declarant's age, physical and mental condition, the circumstances of the event, and the declarant's basis for knowing the statements to be true and accurate.

■ The requirements for admissibility must be considered in the light and experience of the particular declarant. *United States v. Cox,* 11 M.J. 795 (AFCMR 1981). In order to find that 803(2) applies, it must appear that the declarant's condition at the time was such that the statement was spontaneous, excited or impulsive rather than the product of reflection or deliberation. *United States v. Iron Shell,* 633 F.2d 77 (8th Cir.1980). The factual situation here is not unlike that in *United States v. Cox, supra.* There the victim of an act of sodomy was a four-year-old girl. She told her father that the accused had "made ice cream." Although the victim was more clearly excited about the events in *Cox, supra,* as opposed to the victim here, we do not believe the degree of excitation is the key to admissibility. Rather, it is the spontaneity of the statements. *See United States v. Hill, supra.* Here it is clear that the child was motivated by the event and its "magic" when she spontaneously told her mother about the magic and how it was done. When all the facts we set forth in *Hill, supra,* are considered, the military judge did not abuse his discretion in admitting the statements made by the girl to her parents.

■ As for the statements made by the victim to Bowman, assuming, *arguendo,* that the military judge erred in admitting such evidence, it was harmless beyond a reasonable doubt since the victim testified at trial as to the matters contained in the alleged hearsay statement.

### The Victim as a Witness

■ Appellant contends that the five-year-old victim was incompetent as a witness because her *voir dire* by the military judge was casual and leading. We do not agree.

Rule 601, Mil.R.Evid. provides, "Every person is competent to be a witness except as otherwise provided in these rules." This rule eliminates the categorical disabilities, such as extreme youth, which previously existed. S. Salzburg, L. Schinasi, and D. Schleuter, Military Rules of Evidence Manual, at 271 and 272 (1981). The Drafter's Analysis of the rules observes at A18–85, 86 (Change 3, 1 September 1980), Manual for Courts-Martial, United States, 1969 (Revised edition) that the former requirements that the proposed witness know the difference between truth and falsehood and understand the moral importance of telling the truth in order to testify are no longer necessary and merely affect the weight of the testimony and not its admissibility. We conclude that the military judge did not err in allowing the victim to testify.

### Sufficiency of the Evidence

■ Appellant contends the evidence submitted by the Government to prove guilt was both insufficient and contradictory. We do not agree. The Government's evidence proved appellant guilty beyond a reasonable doubt. The victim's testimony has a ring of truthfulness in it, particularly her

966

testimony about the "milk" coming out of appellant's "pee-pee" and his wiping it up with his tee-shirt. Appellant's attempt to recant his admission about the tee-shirt and the failure to find it during the search fortified the government's case.

### Competency of Counsel

 Appellant's contention that he had ineffective counsel is more a product of wishful thinking than reality. He attacks Captain K. as the "lead counsel." He was also represented by detailed defense counsel. We note that the competency of counsel must be measured by the combined efforts of the defense team. *United States v. Walker,* 21 U.S.C.M.A. 376, 380, 45 C.M.R. 150, 154 (1972). Whether defense counsel is considered separately or as a team, appellant was not entitled to an acquittal. He was only entitled to a lawyer who would "exercise the customary skill and knowledge which normally prevails within the range of competence demanded of an attorney in criminal cases." *United States v. Rivas,* 3 M.J. 282, 287 (CMA 1977). In evaluating the effectiveness of trial representation, neither appellate courts nor other counsel should attempt to second-guess the strategic and tactical decisions made at trial by the chief counsel. *United States v. Rivas, supra.* We have examined all the alleged occasions of ineffectiveness, singularly and combined. It would serve no useful purpose to set them forth here and unduly lengthen this opinion. Suffice it to say that the alleged examples are either trivial or misconceived. There was no lack of effective counsel here.

### The Recommendations of the Article 32 Investigating Officer

 Without giving us the benefit of any citation of authority, appellant contends the staff judge advocate abused his discretion in not following the investigating officer's advice by dismissing the charges and that the convening authority abused his discretion by directing a court-martial. We do not agree. We know of no law or rule which makes the investigating officer's advice binding on anyone. The verdict in this case demonstrates that the staff judge advocate and convening authority acted correctly.

The findings of guilty and the sentence are affirmed.

Senior Judge MILLER concurs.

KUCERA, Judge, concurring:

While in every respect I concur with, and share, the opinion of the Court, I also hasten to verbalize my innate feelings about the ethical aspects enmeshed in appellant's contention that he was denied the effective assistance of counsel. Suffice it to say that generally it does not comport with my sense of fairness for an accused to accept the representation and efforts on his behalf of a conscientious and capable lawyer, stand by to abide the outcome, and when he loses, to turn and attack that counsel as incompetent. *See State v. Smith,* 621 P.2d 697 (1980). Even more disconcerting, however, is the fact that in the case at bar the appellant anchors his claim of inadequacy by his individually-appointed defense counsel to a post-trial affidavit executed by the regularly-appointed defense counsel who (1) represented the appellant at the Article 32 Investigation; (2) participated in planning of the "defense strategy" of the case; and (3) sat at the appellant's side as the appointed defense counsel throughout the trial. For him to idly sit by during the trial and thereafter throw the "barbs of inadequacy" at his co-counsel's efforts to represent their client casts a doubt on the regularly-appointed defense counsel's fitness to continue to represent accused in trials by courts-martial.