**UNITED STATES, Appellee,**

v.

**Private First Class Larry R. LEMERE, SSN 392–70–3806, United States Army, Appellant.**

**CM 442431.**

U. S. Army Court of Military Review.

28 June 1983.

---

Captain John Lukjanowicz, Jr, JAGC, argued the cause for the appellant. With him on the brief were Colonel William G. Eckhardt, JAGC, Lieutenant Colonel R. Rex Brookshire II, JAGC, and Major Robert C. Rhodes, JAGC.

Captain Charles S. Arberg, JAGC, argued the cause for the appellee. With him on the brief were Lieutenant Colonel John T. Edwards, JAGC, and Major Michael R. Smythers, JAGC.

Before CLAUSE, COHEN and NAUGHTON, Appellate Military Judges.

## OPINION OF THE COURT

NAUGHTON, Judge:

Contrary to his plea, appellant was convicted by a general court-martial composed of officer members of committing sodomy with a child under the age of sixteen in violation of Article 125, Uniform Code of Military Justice, 10 U.S.C. § 925 (1976). He was sentenced to a dishonorable discharge, confinement at hard labor for twelve years, forfeiture of $450.00 pay per month for 144 months, and reduction to the grade of E–1. The staff judge advocate recommended the convening authority approve the sentence as adjudged. The convening authority, without explanation, reduced the period of confinement at hard labor to six years and otherwise approved the adjudged sentence.[1]

The principal issues in this case involve whether the three and one-half year old victim was competent to testify as a witness, and whether testimony concerning a statement made by the victim to her mother about the alleged incident was admissible in evidence as an excited utterance under Rule 803 of the Military Rules of Evidence.

Mrs. N, the mother of the victim, testified that on 25 December 1981 appellant

---

1. The record of trial does not include the convening authority's statement required by paragraphs 85c and 91a of the Manual for Courts-Martial, United States, 1969 (Revised edition), explaining the difference in his action from that recommended by his staff judge advocate. This is error, but under the circumstances not prejudicial. *United States v. Humphrey*, 14 M.J. 661, 663 (A.C.M.R.1982).

was a guest at her home for Christmas supper. During the course of his visit, appellant took the victim, Christy, upstairs to her room. When Mrs. N went upstairs, she noticed that Christy's door was closed. She stated that this was very unusual because up to that time Christy never closed the door to her room. Mrs. N testified that when she tried to open Christy's door she discovered it was locked from the inside. According to Mrs. N, Christy never locked her door. Mrs. N quickly knocked on the door, but it took from two to four minutes for appellant to open the door. When he did, Mrs. N saw Christy lying on her bed and called her. Christy stood up, revealing to Mrs. N that Christy's panties were pulled above the line of her slacks, with almost half of her panties exposed. Mrs. N testified that appellant looked nervous and astonished when he opened the door. He told her that Christy wanted to sleep. Mrs. N responded that it was not time for Christy to sleep. She took Christy downstairs, followed by appellant, and told her husband, Sergeant (SGT) N, that it was time to take appellant home. The time was somewhere between 1900 and 1930 hours. SGT N, Mrs. N and Christy all rode in the car to take appellant home. Christy fell asleep in appellant's arms during the ride. She remained asleep when Mrs. N put her in her bed and she did not awaken until the next morning. When Christy awoke she went downstairs to play with her new Christmas toys. Sometime thereafter, Mrs. N awoke and brought Christy back to her bedroom to dress her. She asked Christy what appellant had been doing in her room with the door closed, and Christy responded, "Larry put his mouth in my tail." While making this statement, Christy pointed to her tongue and to her groin area. When Mrs. N washed Christy that morning, she noticed that Christy's vaginal area was red. Mrs. N stated that Christy had never made a statement similar to the one concerning appellant, nor had she exhibited any curiosity about sex. Although SGT N had magazines in the house depicting acts of cunnilingus, Mrs. N testified that Christy never saw them because they were kept out of her reach.

SGT N testified that to discipline Christy, he ordinarily would scold her, but would on occasion, spank her on the bottom with a belt. Since the age of two and a half, Christy has been able to communicate in Spanish and English, mixing the languages. SGT N stated that Christy has known the difference between right and wrong since she began talking. SGT N and his wife have emphasized to Christy that she should not tell something that was wrong or a lie. SGT N recalled having caught Christy telling a lie nine or ten months previously, for which he punished her. He testified that since that time Christy had not lied to him. He further stated that Christy has a good memory and she is able to remember an impressive event that happened a month earlier.

Christy was sworn as a witness. Under questioning by the trial counsel, she stated that she would be punished if she told a lie, she understood that she had to tell the truth in the courtroom, and she promised to tell the court exactly what happened. The military judge permitted trial defense counsel to voir dire Christy concerning the oath. In response to defense questioning, Christy stated that the trial defense counsel and the military judge had been at her house for Christmas dinner. The military judge explained to Christy that she had to tell the truth and she was not to tell any lies. Christy responded that she understood, and the military judge permitted her to testify.

Christy testified that appellant, whom she identified as Larry, came over to her house on Christmas. Christy testified that Larry took her up to her room where he put "the Boca en mi Cola." Christy identified "boca" as tongue. Using an anatomically correct doll, Christy indicated that appellant had pulled her panties down and put his tongue into her vaginal orifice. During cross-examination, Christy reiterated that the trial defense counsel and the military judge were at her house on Christmas and added three of the court members to the guest list. She also asserted that she lived

in a store and that she had seen the trial counsel go potty at her house. Additionally, Christy stated, contrary to her mother's testimony, that she could lock her bedroom door and that she had looked at some magazines (unspecified) that her father had in the bathroom. In response to the question of trial defense counsel, "Christy, did I put my boca on your cola?", Christy said, "No, Larry." When asked if anybody else ever put their "boca" on her "cola", Christy stated, "No, Larry, Larry, Larry, no, not you, Larry." Christy's testimony concluded with some inconsistent responses as to who told her what Larry did to her in the bedroom.

The defense called SGT N, its first witness. SGT N testified that magazines such as "Penthouse" and "Playboy" had been in his home for about two years and he read some of them in the bathroom adjoining the master bedroom. These magazines were kept out of Christy's reach on a shelf in a closet in the master bedroom. SGT N stated that he never left any of these magazines laying around the house. SGT N further testified that since he had been in Hawaii appellant had babysat Christy once and a young girl who lived next door named Sam had sat with Christy on all other occasions.

Appellant testified that he took Christy upstairs after she asked him to take her to the bathroom. He did not go into the bathroom with her. After she finished, Christy said "toys, bedroom." Appellant stated that he then went to Christy's bedroom and sat down on her bed. Christy followed him into the room, shut the door and locked it, got on the bed, and started rolling in the covers playing around. When appellant heard someone knocking at the door, he unlocked the door in about five seconds and Mrs. N opened the door. Appellant told her that Christy was asleep, but Mrs. N told Christy to go downstairs and watch television. Appellant testified that Christy's clothing was not in disarray; specifically, that he noticed nothing unusual about her pants or panties. Appellant denied taking Christy's pants down and denied ever touching her vaginal or rectal areas. Appellant admitted that he was surprised when Mrs.

N knocked on the door, although he did not know why, and, for reasons he could not explain, he did not want Mrs. N to see Christy in bed.

After the Government and defense had rested their cases, the court members requested further testimony. Mrs. N, SGT N, and appellant were recalled. Mrs. N testified that the redness on Christy's vaginal area lasted three days. Appellant testified that he did not want Mrs. N to see Christy when she opened the door because he was playing a game with Mrs. N. He was surprised and nervous when he heard the knock on the door because he thought somebody was trying to do something to Christy. Appellant explained that somebody had once tried to do something to his sister's kids and this thought popped into his mind.

The members also called Christy's babysitter, a twelve-year-old girl who lived next door to the N's. She testified that she had never seen any magazines such as "Playboy" or "Penthouse" in the Ns' home nor had she ever shown similar magazines to Christy.

The defense had earlier moved *in limine* to prevent Christy from testifying, asserting that she was incompetent to testify and unable to be properly sworn. The military judge denied the motion. The defense also moved to exclude the statement Christy made to her mother the morning after appellant's crime, arguing that the statement was inadmissible hearsay. The military judge denied this motion, ruling that the statement was admissible as an excited utterance under Military Rule of Evidence 803(2).

I

Appellant contends that the military judge erred in permitting Christy to testify after it became apparent that she had no appreciation of her duty to speak the truth. We do not agree.

Military Rule of Evidence 601 states, "Every person is competent to be a witness except as otherwise provided in these rules." Thus, everyone is considered com-

petent to testify except where privilege applies or the individual is unable or unwilling to take the oath or affirm to tell the truth. *United States v. Allen,* 13 M.J. 597 (A.F.C. M.R.1982). Eliminated from the rule are the categorical disabilities, such as extreme youth, which previously existed. *United States v. Urbina,* 14 M.J. 962 (A.C.M.R. 1982), *pet. denied,* 15 M.J. 380 (C.M.A.1983); S. Saltzburg, L. Schinasi, and D. Schlueter, Military Rules of Evidence Manual at 271–72 (1981).

Military Rule of Evidence 603 provides, "Before testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness's conscience and impress the witness's mind with the duty to do so." At appellant's court-martial, the trial counsel, prior to administering the oath to Christy, posed questions eliciting her agreement to tell the truth and her explanation that she would be spanked if she lied. Her subsequent confusion of truth, falsity, reality, and fantasy suggests that the trial counsel's efforts thereby to impress upon Christy the duty to testify truthfully were not entirely effective. Nevertheless, we find Christy's initial declaration of intent to tell the truth satisfied Military Rules of Evidence 601 and 603 and allowed the court members to con-

sider as a matter affecting general credibility the uncertain quality of the remainder of her testimony. *United States v. Allen, supra* at 599–600. Under these circumstances, the matters raised in Christy's testimony after she was administered the oath only affect the weight to be accorded her testimony and not its admissibility. Mil.R. Evid. 601.[2]

## II

■ Appellant asserts next that the military judge erred by allowing Mrs. N to testify concerning Christy's statement to her on the morning after the alleged sodomy. We agree.

■ The military judge allowed the hearsay statement in evidence as an excited utterance. Military Rule of Evidence 803(2) defines an excited utterance as, "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." To apply Rule 803(2), it must appear that the declarant's condition at the time was such that the statement was spontaneous, excited, or impulsive rather than the product of reflection or deliberation. *United States v. Hill,* 13 M.J. 882 (A.C.M.R.1982); *United States v. Iron Shell,* 633 F.2d 77 (8th Cir.1980), *cert. de-*

2. The federal rule of evidence on which the military rule was patterned has been consistently interpreted to leave the question of mental capacity to the fact-finder as a matter affecting credibility. *United States v. McRary,* 616 F.2d 181 (5th Cir.1980) (judge erred in refusing to allow accused's wife to testify on grounds that her incompetence to stand trial necessarily precluded her competence to testify; expressing doubt that mental incompetence would be grounds for disqualification of prospective witness); *United States v. Roach,* 590 F.2d 181 (5th Cir.1979) (accused not entitled to psychiatric examination of witness to verify her competence to testify; citing House Judiciary Committee note stating Rule 601 abolishes mental incapacity as ground for witness incompetence); *United States v. Van Meerbeke,* 548 F.2d 415, 418 n. 3 (2d Cir.1976) (judge properly concluded witness's ingestion of raw opium while testifying did not render him incompetent where witness remained coherent and jury could understand him), *cert. denied,* 430 U.S. 974, 97 S.Ct. 1663, 52 L.Ed.2d 368 (1977); *Unit-*

ed States v. Banks, 520 F.2d 627, 630 (7th Cir.1975) (competence of witness to testify, as distinguished from issue of credibility, is a limited threshold decision by trial judge as to whether witness is capable of testifying in any meaningful fashion whatsoever); *United States v. Callahan,* 442 F.Supp. 1213, 1221 (D.Minn. 1978) (judge did not err in permitting witness to testify who, several hours before, had taken synthetic morphine; philosophy behind Rule 601 is that incapacity should not bar witness's testimony but should be developed through cross-examination), *rev'd on other grounds,* 596 F.2d 759 (8th Cir.1979). *But see United States v. Lightly,* 677 F.2d 1027 (4th Cir.1982) (*dicta:* every witness presumed competent to testify under Rule 601 unless it can be shown, *inter alia,* that he does not understand the duty to testify truthfully). For a general discussion on this issue, *see* Woods, *Children Can Be Witnesses, Too: A Discussion of the Preparation and Utilization of Child-Witnesses in Courts-Martial,* The Army Lawyer, Mar. 1983 at 2.

*nied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981).[3] Thus, excited utterances are admissible if they were made so immediately following a startling event that the speaker could not have fabricated his or her remarks. There are three separate requirements for a statement to be admitted as an excited utterance: (1) the occurrence of a startling event; (2) a statement made in close chronological proximity thereto; and (3) a material relationship between the statement and the circumstances of the case in which it is offered. *United States v. Cox,* 11 M.J. 795 (A.F.C.M.R.), *pet. denied,* 12 M.J. 115 (C.M.A.1981); *United States v. James,* 38 C.M.R. 637 (ABR 1967). It is not required that the speaker be absent or unavailable because spontaneous statements generally are regarded as of "superior trustworthiness" to the speaker's actual testimony on a subsequent occasion when those circumstances that insured their reliability are no longer present. 6 Wigmore, Evidence § 1748 (Chadbourne rev. 1976). "The factors to be considered include lapse of time between the startling event and the utterance, as well as the declarant's age, physical and mental condition, the circumstances of the event, and the declarant's basis for knowing the statements to be true and accurate." *United States v. Hill, supra* at 885. Thus, the statements of a four-year old sodomy victim were properly admitted into evidence where it was shown that she ran home, "immediately following the offenses," woke up her sleeping mother, and appeared "wide-eyed, red-faced, sweaty and excited." *United States v. Cox, supra* at 796. A similar result followed in *United States v. Urbina, supra.* There, a statement made by a five-year old molestation victim to her mother a short time after returning from the accused's apartment that the accused had "made magic with his pee-pee" was admissible as an excited utterance under Military Rule of Evidence 803(2). The victim was described by her

mother at this time as "a little upset." The Court also stated that, "we do not believe the degree of excitation is the key to admissibility. Rather, it is the spontaneity of the statements." *United States v. Urbina, supra* at 965.

Unlike *Urbina,* in the present case, when Mrs. N asked Christy what she had been doing behind closed doors with the appellant, Christy answered in a normal fashion and did not appear upset. It is not unlikely that Christy was far too young to appreciate the nature of appellant's actions and to feel or exhibit the excitement or moral indignation normally expected as a result of such actions. Furthermore, the statements in question were made some twelve to fourteen hours after the "startling event." It is not, of course, merely the passage of time by which the reliability of purported spontaneous or excited utterances is to be weighed. It is the totality of the circumstances within which all three separate requirements must be established. Two of those requirements—the occurrence of a startling event perceived as such by the speaker and the temporal proximity of her statements—are absent here, leaving a greater risk of fabrication or distortion of her perceptions.

■ We now turn to consideration of whether the military judge's erroneous admission of Christy's hearsay statement materially prejudiced a substantial right of the appellant. We find that it did not.

■ "Error not of constitutional dimension may be found harmless only upon the determination either that the finder of fact was not influenced by it, or that the error had but a slight effect on the resolution of the issues of the case." *United States v. Barnes,* 8 M.J. 115, 116 (C.M.A.1979). *See Kotteakos v. United States,* 328 U.S. 750, 764–65, 66 S.Ct. 1239, 1247–48, 90 L.Ed. 1557 (1946). Under the circumstances of

**3.** According to the legislative advisory committee that helped draft the federal rule which Military Rule of Evidence 803(2) duplicates, the underlying theory of the excited utterance exception is "that circumstances may produce *a condition of excitement which temporarily*

*stills the capacity for reflection* and produces utterances free of conscious fabrication." S. Saltzburg & K. Redden, Federal Rules of Evidence Manual 625 (3d edition 1982) [emphasis added]. *See generally* Annot. 48 A.L.R.Fed. 451 (1980).

this case we are convinced that the erroneous admission of Christy's hearsay statement did not affect the court members' verdict. Christy testified at trial as to the matters contained in the hearsay statement to her mother. This testimony when considered with the remaining evidence, particularly, the circumstances of discovering the appellant and the victim behind her locked bedroom door, the appellant's apparent anxiety at being discovered, and his rather lame explanation for his apparent surprise when he opened the door to admit Christy's mother, convinces us beyond a reasonable doubt that the error was harmless and had no impact on the findings.

We have considered the remaining assignments of error and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Judge COHEN concurs.

CLAUSE, Senior Judge, concurring:

I disagree with the majority's determination that the trial judge erred by admitting in evidence the statement of the three and one-half year old victim to her mother. The trial judge admitted the statement as an exception to the hearsay rule under Military Rules of Evidence 803(2). This rule was adopted verbatim from the Federal Rules of Evidence and is a codification of the common law *res gestae* exception to the hearsay rule. It provides an exception for "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." In admitting the statement the trial judge stated,.

> Because for a three and a half year old to make a statement like that strikes me that she's very much under the influence of the event and it was—the answer was given in response to a nonsuggestive question. So I'm going to let that in. And it was made within 12 to 14 hours of the alleged events.

We should not substitute our judgment for that of the trial judge unless we find that admission of the testimony constituted an abuse of his discretion. *United States v. Iron Shell*, 633 F.2d 77, 86 (8th Cir.1980). *See also United States v. Friedman*, 593 F.2d 109 (9th Cir.1979); *United States v. Bailey*, 581 F.2d 341 (3d Cir.1978).

The three and a half year old victim in this case was far too young to appreciate the nature of the act and to feel or exhibit the excitement or moral indignation normally expected of a more mature victim as a result of such an act. In addition, the act was committed in the child's bedroom by a houseguest of the family on Christmas day, a day normally filled with excitement for a child of the victim's age. These factors all diminished the normal response expected as a result of such a sexual assault. However, the offense was clearly a startling event. The trial judge determined that the victim was still under the influence of the event when she made the response to her mother's non-suggestive question. I believe that under the circumstances of this case that is sufficient to meet the requirements of the rule. *See United States v. Nick*, 604 F.2d 1199, 1202 (9th Cir.1979).

With respect to the timeliness of the statement, it should be noted that there is no fixed time under the rule and each case must be decided on its own circumstances. The purpose underlying the timeliness requirement is to assure reliability of the statement by precluding time for reflective thought which would allow for contrivance and misrepresentation. There is nothing to indicate that the child in this case engaged in reflective thought or had any motive to fabricate. Age of the victim has been a distinct factor which the courts have considered in determining this element of the rule. The decisions on this element are numerous and well catalogued by time increments of a "few minutes" to "more than one day" in an annotation in 89 A.L.R.3d 102 (1979). Statements of infants and minors are separately listed under each time increment as it is apparent that the courts are greatly influenced by this factor. *See Commonwealth v. Nowalk*, 160 Pa.Super. 88, 50 A.2d 115 (1946); *Haley v. State*, 157

Tex.Cr.R. 150, 247 S.W.2d 400 (1952); *Love v. State,* 64 Wis.2d 432, 219 N.W.2d 294 (1974). This is especially true in the reported Michigan cases where the courts have expressly relaxed the timeliness requirement for victims of a tender age when the delay is satisfactorily explained. *See People v. Debreczeny,* 74 Mich.App. 391, 253 N.W.2d 776 (1977); *People v. Davison,* 12 Mich.App. 429, 163 N.W.2d 10 (1968). I believe that under the circumstances of this case the trial judge was correct in finding that the period of twelve to fourteen hours was timely.

Although not capable, because of her tender age, of understanding the nature of the incident, the victim in this case confided in her mother in response to a non-suggestive question at a time when she was undoubtedly still under the influence of the incident. The statement related to the circumstances of the occurrence and there is nothing to indicate that the child engaged in reflective thought or had any motive to fabricate. For the foregoing reasons I believe the trial judge correctly determined that the statement was admissible.

Although I would hold that the statement by the child to her mother was properly admitted, I agree with the majority that even if it was error, it was harmless under the circumstances of this case.