UNITED STATES, Appellee,

v.

Sergeant John A. KEATTS,
222–28–0595, United States
Army, Appellant.

CM 445265.

U.S. Army Court of Military Review.

22 Aug. 1985.

. Lieutenant Colonel Arthur L. Hunt, JAGC, Major Robert M. Ott, JAGC, and Captain Mark W. Harvey, JAGC, were on the pleadings for appellant.

Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Lieutenant Colonel Thomas M. Curtis, JAGC, and Captain Garreth E. Shaw, JAGC, were on the pleadings for appellee.

Before WOLD, FELDER and NAUGHTON, Appellate Military Judges.

OPINION OF THE COURT

NAUGHTON, Judge:

Contrary to his pleas, appellant was convicted by a general court-martial composed of officer members of committing sodomy, indecent acts, and lewd acts with a female under the age of sixteen, as well as carnal knowledge, in violation of Articles 120, 125, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 925 and 934 (1982). He was sentenced to a dishonorable discharge, confinement at hard labor for fifteen years, forfeiture of $223 pay per month for fifteen years, and reduction to the lowest enlisted grade. The convening authority approved the sentence.

Appellant raises numerous assignments of error on appeal, but only one merits discussion. This issue is whether an out-of-court statement made by the seven-year-old victim to her mother was admissible as an excited utterance under Rule 803(2) of the Military Rules of Evidence.

Mrs. S, the mother of the victim, testified that on 22 June 1983, her daughter, T, was playing upstairs with appellant in his apartment. (Mrs. S and appellant were stairwell neighbors in an off-post apartment building in Germany.) She went upstairs to get her daughter, and finding the door to appellant's apartment closed, knocked and entered. She saw appellant sitting on the floor with his legs spread open. T was sitting facing appellant, with her legs over his. As soon as Mrs. S entered the room, her daughter jumped away from appellant. She seemed startled, and had a frightened expression on her face. When she asked T what was wrong, her daughter said "Nothin" [sic], and appellant said "[W]e make gymnastic." Mrs. S told T to come downstairs, and returned to her apartment. When about fifteen minutes had elapsed and T still had not come home, Mrs. S went upstairs again, knocked, and hearing no answer, again entered appellant's apartment. She observed appellant on his hands and knees like a horse with T on his back. T jumped away when Mrs. S entered the room. T seemed frightened. Mrs. S related to the court that:

> I never seen her before like this. I mean they playing around me too—she play with him and my son, but I never seen that scared face—you know. Then, I ask her, "What's happening, what's wrong, why you so scared?". She said, "Nothing". I said, "Well, come on and go to the bed". When we went downstairs, I put her to bed, 'cause it was late anyway. And, the next day after she do her homework, I ask her again. I say, "[T], what's happen between you and Mr. Keatts—John? [appellant] Why you look so scared yesterday I never seen you

that way before?" She said, "Nothing mommie, nothing." And, she had that scared look on her again, and I said, "What the hell happen, now?" Then she started crying. "I can't tell you, John told me I can't tell you that." I said "Please, what, won't you please tell me, I'm your mother." "You spank me?" I say, "No." Well, she stop crying then, and I ask her—I told her everything about making—you know—like parents make babies, she knows this, and she knows—she had a—before she was three years old, she had a friend of about eight years, right. And, they look at some book, I don't know if she catch it, or hear from T.V. or what, but her word is, "sexy" for a man and woman. Well, I asked her if she played with him sexy, or if he ever touched her on her vagina, and then she said, "Yes, with his fingers." And, I ask her and ask her again, and she told me that he was licking with his tongue on her vagina, and she had to do the same on his penis, but she said, she didn't like, she just done it one time on the side, and she said, one time he came out of the shower naked, and she told me she had to grab his penis. Also, she told me, somedays he was playing with his penis, and some white stuff came out, and he put it in—it fell in the garbage can—in the garbage. One day she said, he tried to—he wanted to put his penis in her vagina, but she didn't like it because it was hurting he was so heavy, and she just was getting up and go to playground, and that's all she told me.

There was no physical or medical evidence of injury or penetration of the vagina. Appellant testified that he did not commit the charged offenses.

T was sworn as a witness and testified under direct examination that appellant:

> ... was playing on my mushila.[1] I did not like it, and then I was to play on his pee-pee,[2] and then he himself played with his pee-pee, and some white stuff came out—he put it in the trash. One time he

---

1. "Mushila" meant vagina to T.

2. "Pee-pee" meant penis to T.

came out from the shower, and he was nude, and then I had to—he was licking me first on my mushila, and then I had to lick him, I didn't like it. And, that was it.

T also testified that appellant effected vaginal penetration with his penis.

On cross-examination, T testified that her mother would spank her when angry, "but not very hard", and that she would be frightened if she thought her mother was going to be angry with her.

Appellant contends that the military judge erred by allowing Mrs. S to testify concerning T's statement to her on 22 June, relying heavily on our opinion in *United States v. Lemere,* 16 M.J. 682 (A.C.M.R. 1983), *pet. granted,* 17 M.J. 34 (C.M.A. 1983). However, these cases are fact-determined. "The admission of an excited utterance is within the sound discretion of the military judge, and his evidentiary ruling will be overturned only when there has been a clear abuse of discretion." *United States v. Whitney,* 18 M.J. 700, 701 (A.F.C. M.R.), *pet. denied,* 19 M.J. 58 (C.M.A.1984).

Military Rule of Evidence 803(2) defines an excited utterance as: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." This rule adopts the Federal Rule of Evidence 803(2) verbatim. Numerous states have also adopted the Federal Rules; consequently, there is a large body of law which has interpreted Rule 803(2) as it relates to the child witness. *See generally* Annot., 48 A.L.R.Fed. 451 (1980); Annot. 89 A.L.R.3d 102 (1979).

■ There are "three separate requirements for a statement to be admitted as an excited utterance: (1) the occurrence of a startling event; (2) a statement made in close chronological proximity thereto; and (3) a material relationship between the statement and the circumstances of the case in which it is offered." *United States v. Lemere,* 16 M.J. at 687.[3]

■ These requirements do not constitute a mechanical formula, but must be considered in the light and experience of the particular declarant. *United States v. Urbina,* 14 M.J. 962 (A.C.M.R.1982). The crux of this hearsay exception is to ensure the trustworthiness of the out-of-court statement. Consequently, "it must appear that the declarant's condition at the time was such that the statement was spontaneous, excited or impulsive rather than the product of reflection or deliberation." *Id.* at 965; *see* S. Saltzburg & K. Redden,

---

**3.** In *Murphy Auto Parts v. Ball,* 249 F.2d 508 (D.C.Cir.1957), *cert. denied,* 355 U.S. 932, 78 S.Ct. 413, 2 L.Ed.2d 415 (1958), Chief Justice (then Judge) Burger described the three requirements as follows:

A majority of decided cases and authorities appear to require the presence of three elements in order for an out of court statement to qualify as an excited utterance or spontaneous declaration. These are (a) an exciting event (b) an utterance prompted by the exciting event without time to reflect, *i.e.,* dominated by the nervous excitement of the event, and (c) the utterance must explain or illuminate the exciting event. But a careful analysis of the entire subject demonstrates that the third element, mechanically and narrowly construed, is a spurious element, and that reliability of the utterance is not inflexibly dependent upon the subject matter of the utterance.

The test for receiving the utterance, therefore, should be whether it meets the first two requirements of a spontaneous declaration or excited utterance referred to earlier. This lies essentially with the trial court, and not unlike the evaluation of credibility is one based in part, at least, on observation of the witness, the context of the statement and the surrounding circumstances. It should be kept in mind that as soon as the excited utterance goes beyond description of the exciting event and deals with past facts or with the future it may tend to take on a reflective quality and must be more carefully scrutinized with respect to the second element, that of true spontaneity.... Most often the excited utterance, as a practical matter, relates to the exciting cause, *i.e.,* description of an accident, an attack, etc., but if the utterance goes beyond a description of the occurrence and still meets the other tests of the excited utterance rule, we think it should be received if it is relevant. *Id.* at 511–512 [footnotes omitted]. Chief Justice Burger also noted: "As Wigmore points out this third element has been erroneously carried over from the verbal act doctrine. Wigmore, Evidence §§ 1752, 1754 (1940)." *Id.* at 511 n. 13.

*Federal Rules of Evidence Manual* 574 (3d ed. 1982).

The fundamental principle of the excited utterance hearsay exception is that a declarant's ability to reflect and shade the truth is temporarily suspended after a startling event, "so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock." 6 Wigmore, *Evidence* § 1747 at 135 (Chadbourn rev.1976). Since the key to the rule is lack of capacity to fabricate, not lack of time, the lapse of time between the startling event and the statement is not outcome-determinative. "The crucial point is that the court must be able to find that the declarant's state at the time he made the declaration ruled out the possibility of conscious thought." J. Weinstein & M. Berger, *Weinstein's Evidence* 803–91 (1984) (footnote omitted).

■ Although the Military Rules of Evidence do not contain an exception to the hearsay rule for witnesses of tender years, the age of the victim, her physical and mental condition, and the circumstances of the event are factors to be considered in determining whether her statement was spontaneous, excited or impulsive rather than the product of reflection and deliberation. *United States v. Lemere*, 16 M.J. at 687; *United States v. Hill*, 13 M.J. 882, 885 (1982). *See also People v. Kreiner*, 415 Mich. 372, 329 N.W.2d 716, 720 (1982).

■ In the case before us, the unspecified interval between the startling event and the child's statement to her mother does not automatically preclude T's statement from being an excited utterance, if the lack of capacity to fabricate is adequately established. *People v. Pottruff*, 116 Mich.App. 367, 323 N.W.2d 402, 407 (1982). "The element of trustworthiness underscoring the excited utterance exception, particularly in the case of young children, finds its source primarily in 'the lack of capacity to fabricate rather than the lack of time to fabricate'." *People in Interest of O.E.P.*, 654 P.2d 312, 318 (Colo.1982). The fact that T's statement was in response to her mother's questioning is not controlling either, but is a factor to be considered. *United States v. Iron Shell*, 633 F.2d 77, 85 (8th Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981); *Fitzgerald v. United States*, 412 A.2d 1, 9 (D.C.1980). The key is whether T was still under the emotional effect of her traumatic episode with appellant. If so, the statement was admissible. If her declaration lost the character of a spontaneous utterance and became a calm narrative of a past event, then the statement fell outside this hearsay exception. *Fitzgerald v. United States*, 412 A.2d at 9.

The crucial factor in the circumstances of this particular case is the effect of the unknown length of the delay between the startling event and T's declaration to her mother. The record of trial is silent as to the time of the traumatic event. Examination of the mother's statement reveals that the child referred to several episodes in her declaration to her mother, none of which appear directly connected to her play with appellant during the preceding evening. The only factor tending to connect the startling event with T's play with appellant on 22 June is T's nervous behavior which triggered her mother's suspicion and inquiry. As a result, the gap in time between the incidents of sodomy, indecent and lewd acts and carnal knowledge and T's declaration could have encompassed several months. It is clear that the child did not tell her mother at the first opportunity. *See People v. Kreiner*, 329 N.W.2d at 720. Under all these circumstances, we can not be satisfied that the declaration was spontaneous, nor could the trial judge be. Therefore, it was an abuse of discretion to admit the statement.

"Error not of constitutional dimension may be found harmless ... upon the determination either that the finder of fact was not influenced by it, or that the error had but a slight effect on the resolution of the issues of the case." *United States v. Barnes*, 8 M.J. 115, 116 (C.M.A.1979); · *United States v. Lemere*, 16 M.J. at 687; *see also United States v. Iron Shell*, 633

F.2d at 87. We are not satisfied that the court-members were not influenced by Mrs. S's testimony, which was both poignant and descriptive. In view of the lack of physical evidence and appellant's denial of the charged offenses, the victim's prior consistent statement to her mother must have contributed substantially to the verdict. Accordingly, we cannot say the admission of the out-of-court statement was harmless error and will order a rehearing.

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

Senior Judge WOLD and Judge FELDER concur.