UNITED STATES, Appellant and Cross-Appellee

v

KENNETH MARTIN, Private E–1, U. S. Army, Appellee and Cross-Appellant

8 USCMA 346, 24 CMR 156

No. 9475

Decided November 1, 1957

*First Lieutenant Chester F. Relyea* argued the cause for Appellant, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton* and *First Lieutenant Arnold I. Burns.*

*First Lieutenant William H. Carpenter* argued the cause for Appellee, Accused. With him on the brief were *Colonel J. M. Pitzer* and *Major Edward Fenig.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

In the instant case, Martin was tried by a general court-martial upon two specifications alleging perjury, in violation of Article 131, Uniform Code of Military Justice, 10 USC § 931, arising from his alleged false statements in former court-martial trials. The first specification alleged that he had testified falsely as a witness in the trial of one Ridings and the second that he had done so as the accused in his own previous court-martial. In these former proceedings, Ridings and Martin were each tried for sodomy allegedly committed with the same third party at the same place on the same evening.

Accused's former trial took place first, and there the prosecution's case tended to establish that he had committed the act in a chapel within a stockade upon the evening alleged. He took the stand in his own behalf, denying the act and giving an account of his whereabouts that day and evening, which included the fact that he was in his tent at the time the Government's case placed him at the locus of the crime. In addition, he testified that he

had not at any time during the evening been in the chapel. The law officer, in his final charge to the court, included an instruction upon the defense of alibi as the only defense raised in the case and advised as follows:

"... Under the circumstances in this case, the burden is upon the prosecution to establish beyond a reasonable doubt that the accused was present at the scene of the offense at the time it was committed. Consequently, unless you are satisfied beyond a reasonable doubt that the accused was so present, you must acquit him."

Martin was acquitted. The next day he was called as a defense witness at the trial of Ridings, in which the Government sought to prove that Ridings had committed sodomy with the same partner, at the same place, and on the same evening, but a little later in time than when Martin is alleged to have committed the act. As a witness for the defense, Martin gave substantially the same testimony as he had given in alibi at his own sodomy trial, and on cross-examination asserted that he was at no

347

time that night in the place where the offense was alleged to have been committed. The purpose of his testimony was to impeach prosecution witnesses who had testified that he was present in the chapel that evening with Ridings and the participant. Ridings was convicted.

The perjuries charged were based upon the testimony elicited from Martin by the cross-examiner at Ridings' trial and his testimony to the same effect at his own former trial. Prior to pleading to the perjury charges, defense counsel moved for their dismissal on the ground of res judicata. The motion was denied, and Martin thereupon entered his plea of not guilty. The prosecution then presented its case, which consisted of the testimony of three witnesses and transcripts of the accused's testimony in the two prior trials. The three witnesses, one of whom was alleged to have been Martin's partner in the act of sodomy, gave the same testimony in substance as they had previously given at Martin's trial for sodomy. The parties stipulated with regard to each former trial that the court was properly convened, that the oath was competently administered to the accused, and that he was under oath when he gave the testimony. The prosecution called one additional witness in rebuttal whose testimony was irrelevant to the perjury charges. Defense counsel renewed his motion for a dismissal on the basis of res judicata at the close of the Government's case and again after resting his defense, both of which were denied. The court returned a finding of guilty upon the Charge and both specifications and imposed a sentence of dishonorable discharge, forfeiture of $55 per month for two years, and confinement at hard labor for the same period of time. The convening authority approved, but the board of review reversed one of the guilty findings for the following reason:

"As the *basic evidence* in the original trial of this accused for sodomy and that of the present trial for the offense of perjury (Specification 2 of the Charge) *is identical,* we conclude the earlier findings of not guilty preclude a conviction as to this specification."

However, the board went on to hold that a finding on the first specification should be affirmed because that offense concerned the accused's testimony as a witness in Ridings' trial. In view of its reversal of one specification, the board reassessed the sentence and determined that a dishonorable discharge, forfeiture of $55 per month, and confinement at hard labor for one year was appropriate. The Acting The Judge Advocate General of the Army certified the following issues to this Court:

"(1) Was the board of review correct in holding that the doctrine of res judicata applied to the act of perjury committed at the accused's trial for sodomy?

"(2) Was the board of review correct in holding that the doctrine of res judicata did not apply to the act of perjury committed at Ridings trial?"

The accused cross-petitioned for review, and we granted five additional issues which will be considered after disposal of the certified questions.

Our starting point in giving consideration to the first certified question is paragraph 71*b* of the Manual for Courts-Martial, United States, 1951, which provides that:

"The defense of *res judicata* is based on the rule that any issue of fact or law put in issue and finally determined by a court of competent jurisdiction cannot be disputed between the same parties in a subsequent trial even if the second trial is for another offense. The accused, in a proper case, may assert an issue of fact finally determined by an acquittal as a defense."

It is the argument of the Government that the accused's acquittal of the sodomy charge does not necessarily include a specific finding that his alibi was true. It further argues that since the court's general finding does not determine the issue of whether the accused was present upon or absent from the scene of the offense, the conviction of

perjury is not necessarily inconsistent with his acquittal of sodomy. We answer that by saying the law and the record speak to the contrary.

In United States v Smith, 4 USCMA 369, 15 CMR 369, this Court analyzed paragraph 71b, supra:

"If we are not guided by the wording of the Manual, we might be inclined not to extend the doctrine to issues . . . which do not bar a subsequent finding of guilt of another offense. However, the language used by the framers of the Manual is broad and sweeping and covers any issue of fact or law in issue and finally determined; makes no distinction as to issues directly involved or collaterally involved; it does not limit its application to issues arising out of one transaction; and we find no good reason to interpret the provision so narrowly as to require the accused again to litigate an issue which has been decided in his favor."

In that instance, we gave careful thought to the policy considerations underlying the diametrically opposite holdings on the defense of res judicata in criminal cases. Generally speaking, those authorities who refuse to accept the doctrine in perjury cases rely on a policy that to give effect to the defense offers an accused a reward for testifying falsely. Authorities accepting the doctrine are influenced by the policy that criminal litigation would never end if each time an accused testified in his own behalf and convinced a jury he was innocent, he could be tried for the untruthfulness of his testimony. Fortunately, we need not balance policy matters influencing opposing views, for the Manual has spoken in that area and its terms must control.

We recognize there is merit to the argument that a general finding by a court-martial ofttimes makes it difficult to determine whether a particular issue was in fact decided in a prior case. However, in this instance, the claimed difficulty is more imaginary than real. In United States v Sealfon, 332 US 575, 92 L ed 180, 68 S Ct 237, the Supreme Court of the United States not only applied the doctrine of res judicata in

a criminal case, it went on to say that a determination of whether an acquittal in a prior trial embraces a given issue "depends upon the facts adduced at each trial and the instructions under which the jury arrived at its verdict at the first trial." In accused's sodomy trial, the testimony of Government witnesses placed him in the chapel with the designated participant. Their testimony, if believed, overwhelmingly established the commission of the offense. The accused and his witnesses testified he was not in the chapel at that time or during the evening. Factually, therefore, the only dispute to be reconciled by the court-martial was the accused's presence in the chapel at the time of the alleged offense. The instruction given by the law officer which we have previously quoted brought the issue into bold relief. Accordingly, unless the members of the court-martial disregarded the obvious, to seek out the improbable theory that the Government witnesses were to be believed when they testified to his presence but were not to be relied upon concerning the details of the act, the only issue was alibi. A fair evaluation of human behavior compels a conclusion that the acquittal was based on the court-martial resolving that single issue in favor of the accused.

Therefore, it only remains necessary for us to set forth our views as to why we do not accept the Government's argument that the defense of res judicata does not apply in perjury cases. Conceding that a majority of State courts appear to reach a conclusion contrary to ours, we call attention to the fact that the doctrine is a rule of evidence. United States v Smith, supra; United States v Carlisi, 32 F Supp 479 (ED NY) (1940); United States v De Angelo, 138 F 2d 466 (CA 3d Cir) (1943). In keeping with Article 36, Uniform Code of Military Justice, 10 USC § 836, the President prescribed the Manual rule, supra, which we believe is generally recognized in the trial of criminal cases in the United States district courts. It is clear that in the Federal courts a defendant's prior acquittal precludes his subsequent prosecution for perjury committed at the former trial, if a flat contradiction of

**349**

the prior acquittal is involved in the subsequent prosecution. Ehrlich v United States, 145 F 2d 693 (CA 5th Cir) (1944), and cases there cited. Lipscomb v United States, 33 F 2d 33 (CA 8th Cir) (1929), and Kuskulis v United States, 37 F 2d 241 (CA 10th Cir) (1929), seem to have treated the defense of alibi in the former trial as a collateral issue not barring the future prosecution for perjury. However, each case cites with favor Allen v United States, 194 Fed 664 (CA4th Cir) (1912), which promulgated the following standard for the application of res judicata to perjury prosecutions:

". . . public policy may require the recognition of the right sometimes to institute such prosecution. If so much be granted, it may be neither easy nor safe to lay down a fixed and unvarying rule of law defining the circumstances under which such prosecutions may or may not be undertaken. For the purposes of this case, it is enough to say that it is very hard to imagine any state of things which would justify an indictment for perjury of an acquitted defendant against whom the government offers no other substantial evidence than that which had been before the jury which had found him not guilty. The government and its prosecuting officers should not discredit the verdicts and judgments of its own courts by seeking to induce one jury to find that another gave a wrong verdict upon what is in all material respects the same testimony."

In Kuskulis v United States, supra, even though the holding may on the surface seem to be contrary to our view, the court noted that the criterion of the Allen case had been met, stating:

". . . The fact that he was not there would have been a defense to the charge, but he could have been there and still not have been guilty . . . [of the crime charged]. Therefore, it was a collateral fact not directly in issue in the suborna-tion case.

"However, we agree with what is said in Allen v. United States, supra, that the government should not prosecute for perjury upon the same evidence as was relied upon in the former trial. We do not understand this to be true in the instant case."

In United States v Williams, 341 US 58, 95 L ed 747, 71 S Ct 581 (1951), the Supreme Court had the question of whether acquittals of crimes of abuse and of aiding and abetting the abuse of a prisoner barred defendants' subsequent prosecution for perjurious testimony they were alleged to have given in their trial for the substantive offenses. The rationale of United States v Sealfon, supra, was employed, the court saying:

". . . Though former jeopardy by trial for the substantive crimes is not available as a defense against this perjury indictment, it could be that acquittal on the substantive charges would operate 'to conclude those matters in issue which the verdict determined though the offenses be different.' Sealfon v. United States, 332 US 575, 578, 92 L ed 180, 183, 68 S Ct 237."

The language of that case is supportive of our position even though it was held that the facts resulting in acquittal did not bring the defendants within the protection of res judicata. It should be readily apparent that a finding by one jury that a defendant was not the principal or an aider and abettor in abusing a prisoner is not inconsistent with a subsequent finding that he was a bystander who observed another commit the crime.

From the foregoing authorities, we glean a rule for the application of res judicata in perjury prosecutions which warrants no departure from the normal military rule set out in paragraph 71*d* of the Manual, supra. Accordingly, prosecution of the accused for the offense of giving false testimony in his own behalf is barred.

A different result must be reached on the second certified issue. The finding by the court-martial which acquitted the accused that he was not present when he was alleged to have performed the act of sodomy did not include a finding

that he was not present on the subsequent occasion when Ridings committed the offense. Conceding that in his first trial accused testified he was not in the chapel during the entire evening, the court was not required to find that as a fact. The instructions by the law officer only went so far as to require a finding that he was not present at the scene of the offense at the time it was committed. That fact is now incontestable by the Government, but that is not to say it cannot assert his presence at the time of the subsequent offense. This whole tragedy occurred inside a stockade where the parties were at liberty to travel from their tents to the chapel. The court-martial could reasonably find that after the first offense, the parties and the observers left the scene of the alleged crime and returned to their billets and that it was sometime thereafter that Ridings, the participant, and the accused returned to the scene of the second offense. The time and distance factors make it possible for the accused to have been in his tent at the time he was alleged to have committed sodomy in the chapel and yet present as a spectator when Ridings' act was completed. He, therefore, cannot successfully contend that his presence on the latter occasion was put in issue and finally determined by a court-martial in his favor. That matter was never determined until he was tried in the instant case.

For the foregoing reasons, we answer the certified questions in the affirmative and move on to dispose of the issues raised by accused in his cross-petition for review.

Originally we authorized the accused to argue five assignments of error, but three of them were disposed of adversely to him in United States v Cleckley, 8 USCMA 83, 23 CMR 307, and associated cases. Therefore, it will not serve any useful purpose to state and consider them anew.

The first of the remaining issues concerns the cross-examination of the accused by a court member. ■■■■■■■■ Accused asserts that the interrogation deprived him of a fair trial since it demonstrated an abdication by the member of his role as impartial fact finder for that of prosecutor. The questions dealt with three inconsequential inconsistencies between his present testimony and that which he gave at his first trial. The reason for the examination was principally that the accused exhibited a normal lack of definiteness about certain unimportant events, and the member was seeking to have him fix the details with certainty. The argument is advanced that the member's conduct comes within the ambit of what we castigated in United States v Blankenship, 7 USCMA 328, 22 CMR 118, and should require reversal. However, the record does not support such action.

In Blankenship, the member's injection of his talents as a cross-examiner into the trial of the case was recurrent and persistent, even in the face of the law officer's rulings. In addition, it infected other court members. In the case at bar, we are faced with one isolated incident involving only sixteen questions. There was no extensive pursuit of the three testimonial inconsistencies which apparently had lodged in the member's mind, and neither the law officer nor defense counsel opposed the questioning. In short, the member's conduct in this case does not approach touching that indulged in by the errant court member in United States v Blankenship, supra. While it is incumbent upon court members to impartially arrive at the truth, it is worthy of remark that the incident herein involved occurred in the late stages of the trial. By that time, we are not surprised that the member had some reservations about accused's lack of memory. While we do not encourage examination by court members, we cannot prohibit the asking of some clarifying questions. However, an extract from United States v Blankenship, supra, to be found at page 336, bears repeating for the benefit of law officers:

". . . If there are areas of uncertainty in the minds of the court members, they can be mentioned to the law officer, and he or counsel can take over the interrogation to remove the doubt. If, thereafter, members seek to ask questions, the law officer

**351**

can determine the nature of the testimony desired. He must rule on the competency, materiality, and relevancy of the desired information, and he can do that in advance, if necessary. He need not require defense counsel to shoulder the burden of resisting the questioning by a member of the court at the expense of offending the interrogator. If no better way presents itself, the law officer can require the members to submit their questions to him in written form. That might discourage pretended lawyers on the court from being over-zealous, and it would have a tendency to confine them to their proper sphere of activity."

Assuming, arguendo, that in the case at bar the law officer should have intervened with a request that the member privately relay to him the points he wished raised, it is clear from the record that the trial did not, as a result of the law officer's failure to do this, get out of hand. No other court member joined in the interrogation, and the examining member completed his questioning in short order.

Finally, we must review the alleged error that the evidence is insufficient to support the accused's conviction of perjury on the basis of his testimony in the trial of Ridings for sodomy. In the posture of this record, the only possible deficiency could be there was not an adequate showing that the testimony given by the accused at that trial was material. Paragraph 210 of the Manual for Courts-Martial, United States, 1951, provides that:

"The false testimony must be with respect to a material matter, but that matter need not be the main issue in the case. Thus perjury may be committed by giving false testimony with respect to the credibility of a material witness, . . ."

The prosecution's witnesses testified to the details of the crime and that Martin was present at the place where, and at the time when, it occurred. If their testimony could be weakened, Ridings' chances for acquittal were greatly enhanced. Martin was called for the specific purpose of denying his presence in order to cast doubt upon the credibility of those witnesses. Clearly his testimony tended to impeach the credibility of a material witness, and the record established a base to find it was false and known by him to be false. Accordingly, this assigned error is resolved against the accused.

The decision of the board of review is affirmed.

QUINN, Chief Judge, with whom Judge FERGUSON joins (concurring in the result):

In our opinion the Manual for Courts-Martial, United States, 1951, does not define the limits of the defense of *res judicata*. See United States v Mims, 8 USCMA 316, 24 CMR 126, separate opinions of Chief Judge Quinn and Judge Ferguson. We concur in the result.