UNITED STATES, Appellee

v.

Keith B. WASHINGTON, Staff Sergeant
U. S. Marine Corps, Appellant

No. 05-0650

Crim. App. No. 200101011

United States Court of Appeals for the Armed Forces

Argued April 19, 2006

Decided August 9, 2006

BAKER, J., delivered the opinion of the Court, in which GIERKE, C.J., and CRAWFORD, EFFRON, and ERDMANN, JJ., joined.


Counsel


For Appellant:  Lieutenant Richard H. McWilliams, JAGC, USNR (argued); Captain James Valentine, USMC, and Lieutenant Commander Jason S. Grover, JAGC, USN (on brief).


For Appellee:  Lieutenant Mark H. Herrington, JAGC, USNR (argued); Commander Charles N. Purnell, JAGC, USN (on brief); Lieutenant Kathleen A. Helmann, JAGC, USNR.



Military Judge:  A. W. Keller



**THIS OPINION IS SUBJECT TO REVISION BEFORE PUBLICATION.**

United States v. Washington, No. 05-0650/MC

Judge BAKER delivered the opinion of the Court.

Appellant was a Marine Corps staff sergeant stationed at the Marine Corps Air Station in Cherry Point, North Carolina. Contrary to his pleas, after a contested general court-martial before members, he was convicted of carnal knowledge and indecent acts with a child, in violation of Articles 120 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 934 (2000). He was sentenced to a bad-conduct discharge, confinement for nine years and reduction to pay grade E-1. The convening authority approved the adjudged sentence. The United States Navy-Marine Corps Court of Criminal Appeals affirmed. United States v. Washington, 61 M.J. 574, 578 (N-M. Ct. Crim. App. 2005). Upon Appellant's petition, we granted review of the following two issues:

   I.   WHETHER LEGALLY SUFFICIENT EVIDENCE WAS PRESENTED TO PROVE THE OFFENSE OF CARNAL KNOWLEDGE.

   II.  WHETHER THE LOWER COURT ERRED WHEN IT RULED THAT A MILITARY JUDGE MAY ADMINISTER AN OATH OF TRUTHFUL TESTIMONY TO A CHILD AFTER THE TESTIMONY IS COMPLETE.

On Issue I, viewing the evidence in the light most favorable to the prosecution, we conclude that the evidence was legally sufficient. On Issue II, we conclude that in the context of this case, Appellant was not materially prejudiced by the failure to administer the oath in light of the corrective action

taken.  As a result, we affirm the decision of the United States

Navy-Marine Corps Court of Criminal Appeals.

BACKGROUND

At the time of the alleged offenses, Appellant and his

wife, Krystal, lived in on-base housing along with their

triplets, age five, and their daughter, C.B., age eight.  At

Appellant's court-martial, Krystal testified that around 9:30

a.m. on June 27, 1998, she left the house to buy breakfast for

the family at Hardee's.  She returned home a little before 10:00

a.m., and soon afterwards, made arrangements to drive her mother

to Georgia.  Krystal intended to drive and spend the night in

Georgia with her mother and a friend, leave the children with

Appellant, and return home the following day.  She discussed

child care arrangements with Appellant, and told C.B. to take a

bath.  When Krystal and her mother left the house at about 10:30

a.m., Appellant was in bed wearing basketball shorts.

Krystal testified that not long after leaving the house,

she realized she forgot to pack a particular dress.  She

returned home and tried to open the screen door.  The screen

door was generally left unlocked, but upon her return, she found

it locked.  She tapped on the window of the triplets' room, and

all three came to the door and opened it.  Krystal asked where

C.B. was, and the children told her she was "in the room with

3

daddy." Krystal walked into her bedroom to get the dress and saw Appellant and C.B. in bed together.

Krystal testified that she became angry because she believed C.B. had ignored her demand to take a bath. She asked C.B., "[d]idn't I tell you to take a bath?" When C.B. tried to get out of bed, Appellant grabbed her and said, "[l]eave the girl alone. She's just laying here." Krystal and Appellant began to argue, and when Appellant continued to not let C.B. out of bed, Krystal pulled hard on the bed covers. Before Appellant could pull the covers back up, Krystal saw that he and C.B. were "spooned into each other." C.B.'s underwear and shorts were at the foot of the bed, and Appellant was totally naked. Krystal testified that Appellant had a partial erection in that "about-to-lose-it stage." She attempted to call the police, but Appellant disconnected the phone and tried to restrain her, telling her she was not going to "leave the house thinking that's what [she had seen]." Krystal hurriedly ordered all four children, still in their night clothes and without shoes, into her car and drove them six to eight hours to Georgia.

DISCUSSION

A.  Sufficiency of the Evidence

Appellant first challenges his conviction on the ground that there was insufficient evidence to prove he committed carnal knowledge on June 27, 1998.  He argues the offense of carnal knowledge requires proof of sexual penetration, and the Government failed to introduce legally sufficient evidence showing he engaged in an act of sexual intercourse with C.B.

An Article 120(b), UCMJ, violation for carnal knowledge requires:  (1) that the accused commit an act of sexual intercourse; (2) with a person who is not the accused's spouse; and (3) who is under sixteen years old.  "Penetration, however slight, is sufficient to complete" the offense.  Article 120 (c), UCMJ.

When determining whether the evidence was legally sufficient to show an act of sexual intercourse on June 27, we "'view[] the evidence in the light most favorable to the prosecution'" and decide whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  United States v. Brown, 55 M.J. 375, 385 (C.A.A.F. 2001) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); United States v. Turner, 25 M.J. 324, 324 (C.M.A. 1987).

At the court-martial, the specification for carnal knowledge alleged that Appellant, did "on divers occasions, between on or about 15 April 1998 and 27 June 1998, commit the offense of carnal knowledge with [C.B.], a child under the age of 12." In light of Krystal's testimony about discovering her husband naked in bed with C.B. on June 27, the Government's case focused on the events of that day. The members found Appellant guilty of carnal knowledge on June 27, but they did not find he committed the offense on prior divers occasions. Appellant's central argument is that although C.B. testified about acts of vaginal penetration prior to June 27, the members found him not guilty of those acts, and therefore those same acts could not be considered by either the members or the Navy-Marine Corps Court of Criminal Appeals when determining whether he committed carnal knowledge on June 27. He argues that without the prior acts evidence, there is insufficient evidence showing vaginal penetration occurred on June 27.

For the reasons stated below, we disagree. First, the Government offered some evidence showing vaginal penetration occurred on June 27. Second, in light of the different standards necessary to convict, as opposed to admit, other acts evidence, the members and the lower court might appropriately consider evidence of those prior divers acts for which Appellant was found not guilty.

### Evidence Referring to Events on June 27

On the first day of her testimony, C.B. nodded affirmatively when the Government asked whether Appellant had "touched [her] private parts with his private part more than once." She testified, without reference to any specific day, that Appellant put his private part "inside [her] private part," and that "white stuff" came out of his private part on her belly. She also testified about the specific events on June 27, and stated that after her mother left for Georgia, she sat on her parents' bed to watch television. After Appellant came in, he took off their shorts, they got under the covers and "he started rubbing on [her]."

The following day, the Government recalled C.B. She reiterated her earlier testimony and also stated that the penetration did not hurt because it was partial. Trial counsel elicited the following testimony:

    Q.  But he did put his private part in your private
        part, right?

    A.  Yes.

    Q.  Why didn't it hurt?

    A.  I don't know.

    Q.  You don't know?  Did it go all the way inside
        you?

    A.  No.

    Q.  Did it go inside you though?

A.    Yes.

. . . .

Q.    Do you remember we talked about the one incident that your mother walked in on you, right?

A.    Yes.

. . . .

Q.    Did your daddy touch you times before that, right?

A.    Yes.

Q.    Did he also put his private part inside your private part before that?

A.    Yes.

Emphasis added.  It is clear from this exchange that trial counsel asked C.B. questions pertaining specifically to vaginal penetration.  Immediately on the heel of those questions, trial counsel asked whether Appellant "also put his private part inside [her] private part before" June 27.  (emphasis added). For sure, this testimony is subject to more than one interpretation; however, viewing the testimony in the light most favorable to the Government, a reasonable trier of fact could infer that the word "also" was inclusive, and meant that acts of penetration occurred not only before June 27, but also on June 27.

## Evidence of Prior Acts

Appellant also argues that because the members found him not guilty of carnal knowledge on divers occasions before June 27, the Court of Criminal Appeals erred in relying on evidence regarding those divers acts in upholding the factual and legal sufficiency of the charge to carnal knowledge on June 27.[1]

Appellant's argument that those other acts cannot be considered fails for two related reasons. First, the admissibility of other acts evidence is governed by the Military Rules of Evidence (M.R.E.), and not by the members' verdict. Second, Appellant is arguing, in essence, that a finding of not guilty amounts to a finding of fact -- in this case a finding that C.B.'s other acts testimony was false. However, a finding of not guilty is not a finding of fact, but a determination that the government has not proved all the elements of the charged offense beyond a reasonable doubt. United States v. Watts, 519 U.S. 148, 155 (1997); see also Dowling v. United States, 493 U.S. 342, 348 (1990).

---

[1] In addressing legal and factual sufficiency, the Criminal Court of Appeals opinion states inter alia:

> A careful reading of the record of trial discloses that sufficient evidence of each and every element of both offenses was presented to the members through testimony and other evidence adduced at trial. C.B. testified that the appellant had touched her "private parts" on more than one occasion prior to, or on the morning of, the alleged incident. Washington, 61 M.J. at 577.

Moreover, with respect to other acts evidence involving child molestation and sexual assault, M.R.E. 413 and M.R.E. 414 are "intended to provide for more liberal admissibility of character evidence in criminal cases." Manual for Courts-Martial, United States, Analysis of the Military Rules of Evidence app. 22 at A22-36 to A22-37 (2005 ed.) [hereinafter Drafters' Analysis]. Specifically, M.R.E. 414(a) provides that "[i]n a court-martial in which the accused is charged with an offense of child molestation, evidence of the accused's commission of one or more offenses of child molestation is admissible and may be considered for its bearing on any matter to which it is relevant."

Before a court may submit evidence of prior charged or uncharged acts to a jury, it must examine "the evidence in the case and decide[] whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence." United States v. Huddleston, 485 U.S. 681, 690 (1988); Dowling, 493 U.S. at 348-50. This Court in United States v. Reynolds, 29 M.J. 105, 109 (C.M.A. 1989), while not citing Huddleston, set forth a "three-prong test [] consistent with Huddleston" to govern the admissibility of other acts evidence. United States v. McDonald, 59 M.J. 426, 429 (C.A.A.F. 2004). Although Reynolds dealt with evidence of uncharged misconduct, its three-

10

prong test can apply to evidence of charged misconduct.[2]  The

test contains the following elements:

> 1.   Does the evidence reasonably support a finding by the court members that the appellant committed prior crimes, wrongs or acts?
>
> 2.   What "fact . . . of consequence" is made "more" or "less probable" by the existence of this evidence?
>
> 3.   Is the "probative value . . . substantially outweighed by the danger of unfair prejudice"?

Reynolds, 29 M.J. at 109 (citations omitted).

Applying the first prong of the Reynolds analysis to the

facts of this case, we conclude that a jury could reasonably

find that the prior acts occurred.  C.B. testified consistently

for over two days that her father had on multiple occasions

before June 27 "put his private part inside [her] private part."

What distinguishes these other acts from the acts committed on

June 27 is the quantum of evidence offered to prove them, not

the reliability of C.B.'s testimony.  The focus of the

Government's case was on the acts occurring on June 27, not the

other acts, for it was on June 27 that C.B.'s mother discovered

---

[2] In Huddleston, 485 U.S. at 689, the Supreme Court concluded that evidence of uncharged acts is admissible if the jury can reasonably conclude that the other acts occurred and that the defendant was the actor.  The Supreme Court has applied the Huddleston analysis to evidence of prior charged acts.  See Dowling, 493 U.S. at 348-50; Watts, 519 U.S. at 156 (quoting Dowling, 493 U.S. at 349).  Because Reynolds is consistent with Huddleston, the Reynolds test also applies to prior charged acts.

Appellant in bed with C.B. and her testimony could support C.B.'s.

As for the second Reynolds prong, evidence is relevant under M.R.E. 401 when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401; United States v. Berry, 61 M.J. 91, 95 (C.A.A.F. 2005). In this case, evidence that Appellant may have engaged in the near identical acts with his daughter in the months prior to June 27 is relevant to the determination of whether Appellant engaged in similar conduct on June 27.

Applying the M.R.E. 403 balancing test for the third Reynolds prong, the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. It was integral to the charged conduct, integral to C.B.'s testimony regarding the events of June 27, and consistent in detail and tenor with the evidence regarding June 27.

Because the members could reasonably find by a preponderance of the evidence that the other prior acts occurred, and the other acts evidence is logically and legally relevant, the members and lower court could properly consider evidence of carnal knowledge committed before June 27.

Viewing the evidence in the light most favorable to the prosecution, including C.B.'s testimony, the evidence that

Appellant was found naked in bed "spooning" C.B. with a partial erection, and the evidence of carnal knowledge committed before June 27, we conclude that a rational trier of fact could have found beyond a reasonable doubt that carnal knowledge occurred on June 27.

B. Administration of the Oath After Testimony

We now turn to Appellant's second claim that his conviction and sentence should be set aside because the witness oath was administered to C.B. after her first day of testimony was complete.

The first day C.B. was called to testify, trial counsel asked her a series of questions about whether she knew the meaning of telling the truth, and the difference between telling the truth and telling a lie. The following exchange took place:

Q.   Do you know what the truth is?

A.   Yes

Q.   What is the truth?

A.   Telling what really happened.

Q.   If I told you -- what is a lie? Do you know what a lie is? Tell me what a lie is?

A.   Not telling the truth.

Q.   Not telling the truth. So if I told you the sky was purple right now, what would that be?
A.   A lie.

Q.   That would be a lie, right?

At this point, the military judge interrupted the exchange to ask trial counsel to stand a little further from C.B. so that she would speak in a louder voice. After the interruption, trial counsel commenced with C.B.'s direct examination without administering the witness oath. At the end of the direct examination, consisting of nine pages in the record, trial counsel asked C.B. the following:

> Q. Why did you say what you said today?
>
> A. Telling the truth.
>
> Q. You swore that everything you said today was the truth, correct?
>
> A. Yes.

At this point, trial counsel told the military judge there was nothing further, but also stated that "[t]he only thing, sir, if you require me to swear her in, I will. I think we have pretty much covered it, sir. I didn't officially do it." Trial counsel then engaged in the following exchange with C.B.:

> Q. [C.B.], your testimony today, was it the truth?
>
> A. Yes.
>
> Q. Was it the whole truth?
>
> A. Yes.
>
> A. Was it nothing but the truth?
>
> Q. Yes.
>
> A. So help you God?

14

Q.   Yes.

The following day C.B. was recalled to testify.  On redirect, trial counsel asked whether C.B. remembered that it was important to tell the truth.  C.B. stated that she remembered and testified that she had told the truth the previous day.  Defense counsel did not object to the failure to formally swear in C.B. at the beginning of her first day of testimony, at the close of her testimony, or at the outset of her testimony on the second day of trial.

M.R.E. 603 provides:  "Before testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness's conscience and impress the witness's mind with the duty to do so."  M.R.E. 603 "requires that a witness swear or affirm that he will tell the truth," but it "establishes no specific colloquy to be used in carrying out this requirement.  Any process that is sufficient to 'awaken the witness's conscience . . .' is satisfactory."  United States v. Allen, 13 M.J. 597, 599 (A.F.C.M.R. 1982) (quoting Stephen A. Saltzburg, Lee D. Schinasi & David A. Schlueter, Military Rules of Evidence Manual 276 (1981)).  As stated in the Drafters' Analysis, M.R.E. 603 is taken without change from the Fed. R. Evid. 603.  Drafters' Analysis app. 22 at A22-45.  The Notes of Advisory Committee on Rules for Fed. R. Evid. 603, states that

"[t]he rule is designed to afford the flexibility required in dealing with . . . children" and that "[a]ffirmation is simply a solemn undertaking to tell the truth . . . ."  As with the Fed. R. Evid. 603, M.R.E. 603 requires no special verbal formula, but instead requires that the oath be meaningful to the witness, including a child witness, and impress upon the witness the duty to tell the truth.  See Allen, 13 M.J. at 599-601; see Spigarolo v. Meachum, 934 F.2d 19, 24 (2d Cir. 1991) ("When children testify, the trial court may fashion an oath or affirmation that is meaningful to the witness.").

Because Appellant did not object to the failure of trial counsel to place C.B. under oath, Appellant waived the issue absent plain error.[3]  United States v. Odom, 736 F.2d 104, 112 (4th Cir. 1984); United States v. Pluta, 176 F.3d 43, 51 (2d Cir. 1999); see United States v. Powell, 49 M.J. 460, 465 (C.A.A.F. 1998) (in absence of objection, plain error analysis applies).  In this context, the rationale for applying waiver is twofold:  "First, the defect or failure could have been corrected if a timely objection had been made; second, in the absence of a waiver rule counsel might deliberately avoid

---

[3] We agree with the conclusion of the Court of Criminal Appeals that whether Appellant's absence of objection is considered waiver or forfeiture, the appropriate standard of review is one of plain error.  Washington, 61 M.J. at 576 n.1.  Therefore, we need not and do not address the distinction between forfeiture and waiver in this case.

objecting to a witness being unsworn in order to have a ground of appeal." Odum, 736 F.2d at 115. Under our plain error analysis, Appellant must show that there was error, the error was plain or obvious, and that the error materially prejudiced his substantial rights. Powell, 49 M.J. at 463-65.

There is no doubt that the failure to administer the oath before C.B.'s testimony was error, and that the error was obvious. The plain text of M.R.E. 603 required C.B., by oath or affirmation, to declare that she would testify truthfully "before testifying." The initial colloquy between C.B. and trial counsel fell short of this requirement. However, Appellant's claim fails because he cannot show he was materially prejudiced by the error.

Trial counsel asked if C.B. knew the difference between the truth and a lie, and C.B. indicated that she understood. At the end of her testimony, C.B. stated that she had told the "whole truth" and "nothing but the truth." She then swore that everything she said had been the truth. When C.B. was recalled, she also stated that she only told the truth the previous day. Although the colloquy between trial counsel and C.B. was not a formal oath or affirmation, C.B. demonstrated she understood her duty to tell the truth. In short, consistent with the purpose of M.R.E. 603, but not its temporal requirement, the record of trial reveals that C.B. was alert to the necessity of telling

17

the truth both at the beginning of her testimony and at the outset of the second day of her testimony.

Appellant counters that while C.B. may have been aware of her obligation to tell the truth, she was not aware of the consequences of failing to do so, a requirement Appellant derives from the language of M.R.E. 603 regarding "duty" and the general knowledge possessed by most adults that those who lie on the witness stand may be subject to perjury. In addressing this argument, we need not reach beyond the confines of this case. The law is clear, both in the text of M.R.E. 603 and its analysis, and in federal circuit case law. A particular formula is not required in administering an oath or affirmation, although adherence to the benchbook formula will minimize dispute. This is particularly true in the case of children, where oaths and affirmations may be specially tailored to impress on the particular child the importance of telling the truth. This can be accomplished, as it has been accomplished for many years, without imparting to the child the perils of perjury.

For these reasons, Appellant has not shown that the error prejudiced his substantial rights.

### DECISION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.