**UNITED STATES**

v.

**Staff Sergeant Lawrence L. HARRIS II, United States Air Force.**

Misc. No. 2008–03.

U.S. Air Force Court of Criminal Appeals.

22 Jan. 2009.

Appellate Counsel for the Appellee: Colonel Nikki A. Hall, Major Shannon A. Bennett, and Captain Marla J. Gillman.

Appellate Counsel for the United States: Colonel Gerald R. Bruce, Major Jeremy S. Weber, Captain Ryan N. Hoback, and Captain Naomi N. Porterfield.

Before WISE, BRAND, and HELGET, Appellate Military Judges.

BRAND, Senior Judge:

The military judge granted a trial defense motion to dismiss one charge and one specification of conspiracy to commit perjury and obstruction of justice, one charge and one specification of perjury, and one charge and one specification each of subornation of perjury and obstruction of justice, in violation of Articles 81, 131, and 134, UCMJ, 10 U.S.C. §§ 881, 931, 934,[1] based on his conclusion that the charges were precluded by the application of Rule for Courts–Martial (R.C.M.) 905(g). The government appealed the decision pursuant to Article 62, UCMJ, 10 U.S.C. § 862. Upon careful consideration of that appeal, the record of trial, and the appellate briefs prepared by both sides, we conclude the military judge erred in granting the defense motion. We therefore set aside that decision and remand the case to the trial court for further proceedings.

In deciding this case, we are presented with a matter of first impression before this Court: whether R.C.M. 905(g) prevents the prosecution of an accused who is acquitted after allegedly committing perjury at his court-martial and allegedly enlisting the help of a confederate to commit perjury at the accused's court-martial. We conclude that it does not.

The charges at issue arose out of the appellee's first court-martial. In that court-martial, he was charged with wrongfully using cocaine based on the results of a random urinalysis conducted on 17 July 2007. During that court-martial, on 14 February 2008, the appellee's friend, KH, testified essentially

---

1. The appellee was also charged with wrongful use of cocaine in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. This charge was not a part of the motion to dismiss and is not before us on appeal. Although it is relevant to the history of this case, in the interest of parsimony we will refer to the charges and specifications before us on appeal as "the charges."

as follows: KH used cocaine at the time of the appellee's urinalysis, but had stopped using cocaine by approximately January 2008; KH's preferred method of ingestion was to lace a Black and Mild cigar with cocaine, and then smoke it; KH never told the appellee that he laced his cigars with cocaine; and KH freely allowed the appellee to smoke his cigars.

The appellee also testified on his own behalf, stating that he did not use illegal drugs of any kind, particularly cocaine. The appellee did not know why his urinalysis result was positive for cocaine, until he spoke to KH, who related that KH did use cocaine. The appellee had smoked KH's Black and Mild cigars at least once, and possibly twice, in the three days before he provided a urinalysis. The results of the urinalysis were therefore attributable to KH. The appellee was unaware of this when he was questioned by Air Force investigators and consented to have his hair and urine tested for cocaine. The appellee had a good military record and was proud of his service.

In addition to the appellee and KH, three expert witnesses testified. There were stipulations of expected testimony from seven witnesses. As is normally done in cases of this nature, the military judge instructed a panel of five members that, in order to convict the appellee, four of the five members needed to find that the government had proven, beyond a reasonable doubt, that the hair test and urinalysis were actually conducted on the appellee's hair and urine, that the tests were conducted properly, and that their results were accurate. In addition, the military judge instructed the members that the appellee had presented evidence of his good military character, and evidence that he may have unknowingly ingested cocaine via KH's Black and Mild cigar. The military judge instructed the members that they must acquit the appellee if they had a reasonable doubt as to his guilt, which might exist because the government failed to meet its initial burden, because of the appellee's good military character, or because of the evidence

of the appellee's innocent ingestion of cocaine.

The appellee was acquitted at his first trial so a summarized record of trial was prepared. For reasons unknown, only KH and the appellee's testimony were preserved and transcribed verbatim. The appellee submitted to another urinalysis shortly after his court-martial. The sample he provided on 3 March 2008 tested positive for cocaine once more. As a result, military investigators questioned KH. KH provided a statement alleging that the appellee had previously asked KH "to testify for him" and "cover for him." KH also said there were no Black and Mild cigars in his home in the days prior to the appellee's first urinalysis, and he and the appellee "came up with the story together ... before the trial," which eventually became KH's testimony. As a result of KH's statement, charges were brought against the appellee and referred to a court-martial.

At the appellee's second court-martial, trial defense counsel moved to dismiss the charges of perjury, obstruction of justice, conspiracy, and subornation of perjury.[2] The military judge, citing R.C.M. 905(g), granted the defense motion. He concluded the appellee had been acquitted on the theory of innocent ingestion, and the doctrine of res judicata applied because proving the charges would necessarily require a fact finder to re-visit the issue of whether the appellee did, in fact, wrongfully use cocaine.

## Discussion

In contrast with our powers of review under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we may only act "with respect to matters of law" in this appeal submitted pursuant to Article 62, UCMJ. Article 62(b), UCMJ. We cannot find facts in addition to those adduced by the military judge, and may only disturb the military judge's findings of fact if they are unsupported by the record or are clearly erroneous. *United States v. Fling*, 40 M.J. 847, 849 (A.F.C.M.R.1994) (citing *United States v. Burris*, 21 M.J. 140, 144 (C.M.A. 1985); *United States v. Pacheco*, 36 M.J. 530 (A.F.C.M.R.1992)).

2. During a motion hearing, KH testified that he and the appellee had written out their testimony prior to the appellee's first trial. KH said that

the scripted testimony, which he provided during the appellee's first trial, was false.

We begin by finding that the military judge's conclusion, that the appellee was acquitted because the members believed his testimony, is unsupported by the record. The general verdict of not guilty returned by the members in the first trial was not a finding of fact, but an application of law to facts in evidence, and one which evidently compelled the members to conclude that the government failed to prove its case beyond a reasonable doubt. *United States v. Washington*, 63 M.J. 418, 422 (C.A.A.F.2006); *see also United States v. Brown*, 65 M.J. 356, 359 (C.A.A.F.2007) (members render a general verdict but do not specify how the law applies to the facts); 26 *Moore's Federal Practice*, § 630.00 (Matthew Bender 3d ed.) (in a criminal trial, jury's duty is to decide facts and apply law). Why the members reached this conclusion is indeterminable, particularly in light of the record made available to the military judge. *Brown*, 65 M.J. at 359. The military judge was presented with the testimony of just two of at least twelve witnesses and nothing from the government's case-in-chief. We cannot speculate that the government even met their burden of proof in their case-in-chief. For the most part, the record does not indicate whether the ten witnesses whose testimony was not presented to the military judge were witnesses for the government or the defense. However, the record does reflect that the members were instructed they might acquit the appellee based on his assertion of an innocent ingestion defense, *or* based on his good military character, *or* based on the government's failure to meet their burden of proof with respect to a number of facts. In sum, the military judge was presented with a fraction of the record of trial, which revealed three independent bases for acquittal. In light of this, there was insufficient evidence to support a conclusion as to why the members acquitted the appellee. Therefore, the military judge erred in dismissing the charges of conspiracy to commit perjury and obstruction of justice, subornation of perjury, and obstruction of justice, in violation of Articles 81 and 134, UCMJ.[3]

We cannot resolve the question of whether the military judge properly dismissed the charge of perjury in violation of Article 131, UCMJ, without reviewing the law cited by the military judge.[4] The perjury charge alleges the substance of the appellee's perjurious testimony was that "he did not use cocaine wrongfully." This language falls squarely within the charge of wrongful use of cocaine that was resolved by the members in the first trial.

In concluding that R.C.M. 905(g) dictated that the charges, including the perjury charge, should be dismissed, the military judge relied upon *United States v. Hooten*, 30 C.M.R. 339, 1961 WL 4448 (C.M.A.1961) and *United States v. Martin*, 24 C.M.R. 156, 1957 WL 4732 (C.M.A.1957). *Hooten* and *Martin* both relied on the predecessor to R.C.M. 905(g), Paragraph 71b of the 1951 *Manual for Courts Martial (Manual)*, and our superior court's analysis of this paragraph in *United States v. Smith*, 15 C.M.R. 369, 1954 WL 2302 (C.M.A.1954), to conclude that the doctrine of res judicata prohibits the prosecution of an accused for perjury where the accused testifies on his own behalf and is acquitted.

Paragraph 71b was much more broadly written than R.C.M. 905(g), and stated, "[t]he defense of *res judicata* is based on the rule that any issue of fact or law put in issue and

---

**3.** Part of the charge of conspiracy in violation of Article 81, UCMJ, 10 U.S.C. § 881, alleges that one of the three overt acts that completed the conspiracy was the appellee's perjurious testimony that the appellee did not wrongfully use cocaine. We conclude, on different grounds, that the perjury charge may stand, and therefore, this portion of the Article 81, UCMJ, charge remains valid. Even if the government were estopped from litigating this issue, however, the Article 81, UCMJ, charge could be sustained because the government alleged three distinct overt acts that completed the conspiracy and proof of any one of those three acts would be sufficient to sustain the charge. *See United States v. Collier*, 14 M.J. 377, 380 (C.M.A.1983) (government not required to prove every overt act alleged to sustain a conviction for conspiracy).

**4.** Although the appellant appealed the military judge's decision in its entirety, the appellant argues in its brief that the military judge was correct in dismissing the charges of perjury and conspiracy to commit perjury. In light of our legal analysis, we grant the appellant's appeal in its entirety.

finally determined by a court of competent jurisdiction cannot be disputed between the same parties in a subsequent trial *even if the second trial is for another offense.*" *Manual for Courts–Martial (MCM), United States,* ¶ 71b, *1951* (emphasis added), *quoted in Hooten,* 30 C.M.R. at 341; *Martin,* 24 C.M.R. at 158; *Smith,* 15 C.M.R. at 372. In analyzing this provision, our superior court stated

> If we were not guided by the wording of the [*Manual*], we might be inclined not to extend the doctrine [of res judicata] to issues which do not arise out of one transaction.... However, the language used by the framers of the [*Manual*] is broad and sweeping and covers any issue of fact or law in issue and finally determined; makes no distinction as to issues directly involved or collaterally involved; it does not limit its application to issues arising out of one transaction; and we find no good reason to interpret the provision so narrowly as to require the accused again to litigate an issue which has been decided in his favor.

*Smith,* 15 C.M.R. at 374. Clearly the rulings in *Hooten, Martin,* and *Smith* were based on the language of Paragraph 71b of the 1951 *Manual,* and a different rule may dictate a different outcome.

In 1984, a new version of the *Manual* was published, and the paragraph format of the earlier *Manuals* was replaced with the modern R.C.M. Exec. Order No. 12,473, 49 Fed. Reg. 17,152 (1984). R.C.M. 905(g) replaced Paragraph 71b. *MCM,* A21–48 (1984 ed.). The pertinent language of R.C.M. 905(g) reads:

> Any matter put in issue and finally determined by a court-martial ... which had jurisdiction to determine the matter may not be disputed by the United States in any other court-martial of the same accused, except that, when the offenses charged at one court-martial *did not arise out of the same transaction* ... a determination of law and the application of law to the facts may be disputed by the United States.

(Emphasis added).

The drafters' analysis to R.C.M. 905(g) cites two major differences between it and Paragraph 71b. First, the broad term "res judicata" is no longer part of the rule. Drafters' Analysis, *MCM,* A21–54 (2008 ed.). Second, the doctrine of collateral estoppel is recognized and applied so that "parties are not bound by determinations of law *when the causes of action in the two suits arose out of different transactions.*" Drafters' Analysis, *MCM,* A21–55 (2008 ed.) (emphasis added). Clearly, charges precluded by Paragraph 71b of the 1951 *Manual* are not necessarily precluded by R.C.M. 905(g).

Whether the government may now prosecute the perjury charge as drafted depends not upon *Smith, Martin,* or *Hooten,* but upon how broadly the doctrine of collateral estoppel, as set forth in R.C.M. 905(g), applies to courts-martial. In looking to other jurisdictions, we find varied and divergent applications of collateral estoppel to criminal trials. Some jurisdictions appear to construe the doctrine quite broadly—as broadly, in fact, as Paragraph 71b. *See United States v. Castillo–Basa,* 483 F.3d 890 (9th Cir.2007) (issues of fact or law determined by a final judgment in one case are barred by collateral estoppel, even in a new cause of action). On the other hand, some jurisdictions have taken a very narrow view of the doctrine. *See Bolden v. Warden, W. Tenn. High Sec. Facility,* 194 F.3d 579 (5th Cir.1999) (defendant in a murder trial who is acquitted may be tried for perjury when he testified he did not kill the victim); *State v. Noble,* 2 Ariz.App. 532, 410 P.2d 489 (1966) (defendant in a robbery trial who is acquitted may be tried for perjury when he testified he did not commit robbery). Some jurisdictions hold a view that falls somewhere in between. *See State v. Canon,* 241 Wis.2d 164, 622 N.W.2d 270 (2001) (prosecution for perjury permitted where defendant defended against charge of drunk driving solely on the basis that he was not driving the vehicle in issue and evidence discovered post-trial indicated the defendant lied); *see also State v. Leonard,* 236 N.C. 126, 72 S.E.2d 1 (N.C.1952) (perjury charges not barred if a conviction would not directly contradict a prior acquittal). These divergent applications of the doctrine of collateral estoppel reflect the tension between two competing policy views—that, on the one hand, "criminal litigation would never end if

each time an accused testified in his own behalf and convinced a jury he was innocent, he could be tried for the untruthfulness of his testimony,"[5] while on the other hand, "allowing an acquittal to afford any sort of insulation for perjury will be giving defendants an uncontrollable license to testify falsely.... [T]he successful acquittal on the substantive offense would immunize [an accused] as to the very falsehoods which brought it about." *Adams v. United States,* 287 F.2d 701, 703 (5th Cir.1961).

While we do not adopt a view that collateral estoppel is never a bar to a perjury charge, we conclude that this case, where the government found new and direct evidence that the appellee had committed perjury at his court-martial, which would not have been discovered through due diligence prior to the first trial, falls under the exception to R.C.M. 905(g). First, the charges stem from different transactions. *Cf. Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (res judicata bars multiple prosecutions arising out of a single transaction). The appellee was first tried for allegedly using cocaine in July of 2007. This is an entirely separate transaction and entirely separate cause of action from his alleged false testimony and his alleged conspiracy with KH to commit the same during his court-martial on February 14, 2008.

Second, insofar as whether the government was able to prove, beyond a reasonable doubt, that the appellee used cocaine, it was put in issue and finally determined at the appellee's first trial by applying law to facts. *Brown,* 65 M.J. at 359 (quoting *United States v. Hardy,* 46 M.J. 67, 73 (C.A.A.F.1997)); *see also United States v. Pinkston,* 21 C.M.R. 22, 27, 1956 WL 4546 (C.M.A.1956) (verdict is reached when a jury makes finding of facts and applies law to those facts). Proving that the appellee attempted to procure his acquittal by lying about his cocaine use under oath does not involve revisiting facts affirmatively decided by a fact finder. *See Washington,* 63 M.J. at 422 (finding of not guilty does not amount to a finding of fact but a conclusion that the government failed to prove all elements of the offense beyond a reasonable

doubt); *cf. Smith,* 15 C.M.R. 369, 1954 WL 2302 (military judge's factual determination in one court-martial that a statement was obtained through coercion renders it inadmissible in a subsequent court-martial); R.C.M. 905(g), Discussion.

We recognize this application of collateral estoppel to courts-martial is narrower than some jurisdictions. However, in light of the dearth of precedent applying R.C.M. 905(g), especially to the unique issue of perjured testimony of an accused, we look to the broader context of the *Manual* for guidance. We find a singular intolerance for crimes of dishonesty in military law. Mil. R. Evid. 304(b)(1) allows some unlawfully obtained statements to be used against an accused in a trial for perjury. Mil. R. Evid. 304(f) and 311(f) allow an accused to testify during a motion to suppress statements or evidence without being exposed to his testimony being used against him, *except* for charges of perjury and false swearing. R.C.M. 1210 allows a convicted accused to petition for a new trial if he can show his conviction was obtained through the use of perjured testimony. And, of course, false statements are broadly criminalized through Article 107, UCMJ, 10 U.S.C. § 907. *See United States v. Solis,* 46 M.J. 31, 34 (C.A.A.F.1997) (Article 107, UCMJ, is more expansive than its federal counterpart, 18 U.S.C. § 1001, because military law's purpose "to maintain morale, good order, and discipline—has no parallel in civilian criminal law"). We find that a broader view of collateral estoppel in the context of a perjury charge is inconsistent with these provisions of the *Manual.*

We stress that we do not discount the concern that an accused might face ongoing litigation as expressed in *Martin.* However, several considerations lead us to conclude that this concern is largely theoretical. In this case, the government is not seeking a "second bite at the apple." Rather, the government has clear and direct evidence of perjury from the appellee's alleged accomplice, which was only discovered after the first trial. Viewing the matter more broadly, perjury is a notoriously difficult charge to prove and usually requires direct evidence.

---

**5.** *United States v. Martin,* 24 C.M.R. 156, 159, 1957 WL 4732 (C.M.A.1957).

*MCM,* Part IV, ¶ 57.b. (2008 ed.). We believe this cumbersome burden minimizes the risk that an accused will face perjury charges merely because he testifies on his own behalf and is acquitted. Finally, we recognize that, while prosecutors are afforded discretion in deciding whether to prosecute, they are bound by ethical guidelines enforceable by military judges. *See* TJAG Policy Memorandum 3, *Air Force Standards for Criminal Justice,* Attach. 1, Standard 3–1.1(c) (15 May 2005) (a prosecutor's duty "is to seek justice, not merely to convict"); *cf. United States v. Blanchette,* 17 M.J. 512, 514 (A.F.C.M.R. 1983) (prosecutorial vindictiveness exists where an accused is punished in retaliation for exercising a legal right). We would be inclined to find prosecutorial vindictiveness in a case where an accused testified, was acquitted, and was then charged with perjury based on the same evidence that was offered in the first trial, or based on evidence the government possessed but simply chose not to use; however, this is not that case.

### Conclusion

The appeal by the United States under Article 62, UCMJ, is hereby **GRANTED.** The ruling of the military judge is vacated and the record is remanded for further proceedings.